**UNITED STATES of America**

v.

**B. Ellis ROBINSON and J. L. Hull.**

**Crim. No. 3919.**

United States District Court
N. D. Indiana,
Hammond Division.

July 10, 1968.

---

8. Section 23 of the Bankruptcy Act, 11 U.S.C. § 46 (1964). Compare Rules 60(b) and 37(d), Fed.R.Civ.P.

Victor C. Woerheide, David Quinn, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

W. Henry Walker, East Chicago, Ind., Dennis Stanton, Gary, Ind., for defendant, Robinson.

Martin Kinney, B. K. Delph, Gary, Ind., for defendant, Hull.

# 248

## OPINION

BEAMER, District Judge.

The defendant B. Ellis Robinson is charged jointly with J. L. Hull with murdering a Federal Narcotics agent. Robinson filed a motion to suppress and return certain items seized in a search of his residence pursuant to a search warrant, and subsequent to his arrest in the residence on an arrest warrant. A hearing was had and based upon the evidence at the hearing the motion was granted. The basis of the ruling was that the search warrant, standing alone, did not meet either Federal or Indiana requirements.

After the Court announced its decision, the Government asked time to file additional authorities in support of its position. Later, pursuant to additional time granted by the Court, the Government filed a motion to reconsider the previous decision and offered to produce additional evidence bearing upon the search and search warrant in question. The Court has heard this evidence.

■ The defendant Robinson claims that the Federal Rules of Criminal Procedure provide no means of reopening a decision on any question of fact or law and that the Court's previous decision must stand. While it is true that there is no provision in the Federal Rules of Criminal Procedure equivalent to Rule 60 of the Federal Rules of Civil Procedure, an examination of the authorities indicates that the Court does have power to reopen such a question. See, 6 Orfield, Criminal Procedure under the Federal Rules, § 47.10 at pp. 319, 320 (1967). While no case cited dealt with motions to suppress, cases pertaining to other motions indicate that the Court might reconsider where its original decision was a surprise to one of the parties. In United States v. Hoornbeek, 164 F. Supp. 657 (S.D.N.Y.1954) the Court reconsidered and reaffirmed its previous decision on a motion for a bill of partic-

ulars where it felt that its original decision might have taken a form unexpected by the parties. United States v. Froehlich, 166 F.2d 84 (2d Cir.1948) indicates that the Court may, in its discretion, reconsider its original denial of a motion for new trial. The Supreme Court, however, has held that a trial court might not grant a new trial on its own motion after the Court of Appeals has affirmed its original denial of the motion. United States v. Smith, 331 U. S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). If the Court has power to reconsider any decision prior to the final judgment in the case, it should have power to reconsider the granting of a motion to suppress. Aside from narcotic cases, (see 18 U.S.C. § 1404) there is no right to appeal from an order granting or denying a motion to suppress evidence in a pending criminal case. See 5 Orfield, op cit., § 41.59. If the motion is denied and the defendant is convicted, he may appeal from the final decision. If the motion is granted, however, and the defendant is acquitted, the Government cannot appeal.[1] Thus, the granting of a motion to suppress is hardly ever subject to appellate review. In a case such as this, where the evidence suppressed might be critical, a ruling on the motion to suppress may amount to a final decision in the case. Unless the trial court has the inherent power to review such a decision, there would be great inequity in the criminal process, and the rights of the public would be greatly impaired. Therefore, it is held that the trial court does have inherent power to reconsider a motion to suppress under appropriate circumstances.

■ This case presents such circumstances. Throughout the argument on this motion, there was a great deal of confusion about which affidavit was used and what the Court and counsel meant by the insufficiency of the affidavit and the warrant. At the first evidentiary hearing, Agent Bottorff testi-

---

1. Title VIII *Crime Control Act* of 1968, 82 Stat. 197, amended Title 18 U.S.C. 3731 to provide for an appeal by the government when a motion to suppress is granted.

fied that he believed the affidavit and warrant were left together on the place searched, but he was not sure whether they were attached. Evidence on this point was not even presented by the Government, but was elicited by the Court. Not until the Court expressed its reasons for granting the motion to suppress did the Government counsel appear to understand the importance of this point—the incorporation of the affidavit into the warrant to satisfy federal and/or state requirements—rather they appeared to have assumed it throughout. They asked for additional time to file authorities, and then asked to present additional evidence. They stated, and subsequently proved, that the warrant and affidavit were at all pertinent times, attached. The original warrant and affidavit had been clipped together, and the copies had been either clipped or stapled. Under the circumstances, this is an appropriate occasion for exercising the Court's discretionary power to reconsider its ruling on the motion to reconsider.

## THE SUFFICIENCY OF THE WARRANT

 The Court originally suppressed all evidence seized under the warrant because the warrant failed to meet applicable requirements of federal or state law. Particularly important, in fact the only fatal defect, was the failure of the warrant to contain a statement of the probable cause for its issuance as required by Rule 41(c) of the Federal Rules of Criminal Procedure, or a copy of the affidavit, as required by the state statutes, Burns' Indiana Statutes Annotated § 9–603. Both of these requirements would be met by the physical incorporation or attachment of the affidavit to the warrant. The purpose of both the federal and state requirements is that the person whose premises are searched may be informed of the probable cause of the issuance of the warrant. (See Bedenarzik v. State, 204 Ind. 517, 185 N.E. 114 (1933), Rohlfing v. State, 227 Ind. 619, 88 N.E.2d 148

(1949).) This Court has always held that the physical attachment of the affidavit to the warrant would satisfy the federal requirements and the Indiana Supreme Court indicates that it satisfies the state requirements. Meno v. State, 197 Ind. 16, 25–26, 164 N.E. 93, 96 (1925). Therefore, if the affidavit were appended to the warrant, the warrant would have met both the state and federal requirements.

At the rehearing, the Government presented testimony that the affidavit was attached to the warrant. Judge Kaplan of the Gary City Court, who issued the warrant, testified by affidavit that he knew of the requirements that the warrant include a copy of the affidavit or that it be attached to the warrant and therefore attached the original copies of the warrant and affidavit. Richard James, the U. S. Attorney who aided in the preparation of the affidavit and warrant, testified that the remaining copies of the warrant and affidavit were attached by stapling or paper clips. Agent Bottorff, who served the warrant, stated that the affidavit and warrant left at the premises searched were attached and were left together on the coffee table in defendant's living room with the inventory of articles seized written on the back of the warrant.

 The defendant, although he generally has the burden of proof, (see 5 Orfield, op cit. § 4154 at p. 743) presented no evidence to contradict this testimony. A copy of the warrant left at the premises was produced in court by defense counsel, but there was no evidence that the affidavit was not left with it. The Court finds that the warrant and affidavit were, at all pertinent times, treated as a unit and met the applicable requirements of state and federal law.

 Other objections to the form of warrant were previously raised. First, the Court finds that the failure to direct to a specific officer was not fatal. It was directed to certain classes of state officers and to conservators of the

peace. Although the return on the warrant was made by a federal officer, Gary City police were present at all times and assisted in its service. Further, the term "conservator of the peace" is sufficiently broad to include a federal narcotics agent, and although a federal warrant would have been more properly directed to him by name, the failure to do so was not fatal. See United States v. Clancy, 276 F.2d 617 (7th Cir.1960) rev'd on other grounds, 365 U.S. 312, 81 S.Ct 645, 5 L.Ed.2d 574 (1961). As previously stated in open Court, the affidavit executed by Agent Bottorff showed sufficient probable cause for issuance of the warrant. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The warrant was valid either as a state or federal warrant.

■ The Government has cited numerous cases on the inapplicability of state standards to a warrant used in a federal search. Although these cases all indicate that state requirements are not pertinent if the search meets the federal constitutional requirements, they do not demand discussion here. As suggested earlier, the practice of attaching the affidavit to the warrant is sufficient to comply with both state and federal standards. The only purpose for raising state requirements at any time was as an alternative ground for upholding the warrant if it failed to meet the requirements of Federal Rule of Criminal Procedure 41, particularly as to the power of a city judge to issue a federal warrant. It is clear however, that the City Court of Gary, Indiana, is a court of record and that the judge thereof is authorized to issue a federal warrant under Rule 41, Federal Rules of Criminal Procedure and Burns' Indiana Statutes §§ 2–2401, 48–1201. As stated earlier, this warrant meets both the Fourth Amendment Constitutional requirements and the requirements of the Federal Rules. The statements as to meeting state requirements merely affirm the validity of the warrant.

## ITEMS SEIZED UNDER THE WARRANT

The most difficult question presented by the motion is whether most of the items seized under the warrant were subject to seizure, even if the warrant was valid. Items seized and suppressed by the original order include:

1 pair men's shoes, black

1 bronze shirt

1 white zipper jacket

6 white handkerchiefs

1 spent .38 caliber shell casing

2 loaded .38 caliber shell casings

1 marlin model 55 12-gauge shotgun with choke

2 wet washcloths

The warrant directed the seizure of "Certain instrumentalities used in the commission of the robbery and murder of one Mansel Burrell, on December 19, 1967, in Gary, Indiana, including a pistol probably .38 caliber."

Rule 41(b) of the Federal Rules of Criminal Procedure provides:

(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property

(1) Stolen or embezzled in violation of the laws of the United States; or

(2) Designed or intended for use or which is or has been used as the means of committing a criminal offense;

The state statute has similar limitations.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

There are several related questions concerning the items actually seized in this

case, (1) whether mere evidence other than the fruits, instruments of crime and contraband may be constitutionally seized, (2) whether the items seized here were subject to seizure under the Federal Rules, (3) whether they could be seized without being described in the warrant, and (4) whether they did come within the description of the warrant.

■ The recent decision of Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) abolished the "mere evidence" rule as a constitutional imperative. This rule, whose lineage is traced to the ancient case of Entick v. Carrington, 19 How.St.Tr. 1029, found its clearest judicial expression in Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 265, 65 L.Ed. 647, 652 (1921) where the Court said:

> Although search warrants have thus been used in many cases ever since the adoption of the Constitution, and although their use has been extended from time to time to meet new cases within the old rules, nevertheless it is clear that, at common law and as the result of the Boyd and Weeks cases, supra, they may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or when the valid exercise of the police power renders possession of the property by the accused unlawful, and provides that it may be taken.

This rule has now been rejected by the Supreme Court when it said, in Warden v. Hayden at 387 U.S. 294, 300, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782, 788:

> We come, then, to the question whether, even though the search was lawful, the Court of Appeals was correct in holding that the seizure and introduc-

tion of the items of clothing violated the Fourth Amendment because they are "mere evidence." The distinction made by some of our cases between seizure of items of evidential value only and seizure of instrumentalities, fruits or contraband has been criticized by courts and commentators. * * * The Court of Appeals, however, felt "obligated to adhere to it." 363 F.2d at 655. *We today reject the distinction as based on premises no longer accepted as rules governing the application of the Fourth Amendment.* (emphasis added.)

In *Hayden,* supra, the Court upheld the seizure of items of clothing and weapons found in the course of a "hot pursuit" search for a suspected robber. The clothing was important because it aided in the identification of the suspect. It is clear, therefore, that there is no constitutional barrier to search for and seizure of mere evidence of the crime.

■ The second problem is whether a warrant may be obtained for the seizure of such items. The Supreme Court has said that there is no constitutional infirmity in such procedure but it has also pointed out, at 387 U.S. 294, 308–309, 87 S.Ct. 1642, 1650, 1651, 18 L.Ed. 2d 782, 792, 793:

> The survival of the Gouled distinction is attributable more to chance than considered judgment. Legislation has helped perpetuate it. Thus, Congress has never authorized the issuance of search warrants for the seizure of mere evidence of crime. * * * Even in the Espionage Act of 1917, where Congress for the first time granted general authority for the issuance of search warrants, the authority was limited to fruits of crime, instrumentalities, and certain contraband. * * * Gouled concluded, needlessly it appears, that the Constitution virtually limited searches and seizures to these categories. After Gouled, pressure to test this conclusion was slow to mount. *Rule 41(b) of the Federal Rules of Criminal Pro-*

*cedure incorporated the Gouled categories as limitations on federal authorities to issue warrants * * *.* (emphasis added.)

Congress has now changed this rule by Statute. The Crime Control Act of 1968, Public Law 90–351 Title IX (36 L.W. 122) has amended Title 18 U.S.C. by adding Section 3103a which provides:

In addition to the ground for issuing a warrant in section 3103 of this title, a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States.

Although § 3103a has been superseded by Rule 41 of the Federal Rules of Criminal Procedure, this latter enactment of Congress certainly takes precedence. While it does not retroactively validate previously improper warrants, it must be given credence as an expression of the legislative will. Therefore, while the warrant in question could not have been issued for the seizure of mere evidence, the Congressional enactment and decision of the Supreme Court demonstrate that there is no overriding public policy or Constitutional prohibition against such searches and seizures.

 This is not determinative of the case before the Court, however, because two questions remain. May federal officers serving a warrant for the seizure of the instruments of a crime lawfully seize mere evidence that they find in the course of their search? If not, may the items seized here be construed as instruments of the crime to satisfy the Federal Rule and the description in the warrant?

Upon first examination it appears that federal officers making a search under a search warrant may not seize any items not named therein and that a federal court must suppress any such items that are seized. Rule 41(e) of the Federal Rules of Criminal Procedure provides in part:

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that * * * (3) the property seized is not that described in the warrant, * * * .

The leading Supreme Court case on this question is Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In *Marron* the officers obtained a warrant for the seizure of "intoxicating liquors and articles for their manufacture," but during the course of their search they also seized ledgers and bills relating to the illicit enterprise. The Supreme Court upheld the seizure of the latter items on the theory that they were seized incident to the arrest of a defendant who was engaged in the commission of crime at the time he was arrested. In the course of the opinion, however, the Court held that the seizure of the ledger and bills was not justified under the warrant, saying, at 275 U.S. 192, 196, 198, 48 S.Ct. 74, 76, 72 L.Ed. 231, 236–237:

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

Although the Supreme Court has apparently not been called to rule on the specific question again, they have often and recently quoted the *Marron* language with approval. In Stanford v. Texas, 379 U.S. 476, 484, 85 S.Ct. 506, 512, 13 L.Ed.2d 431, 437 (1965) the Supreme Court quoted *Marron* in finding that the language of a warrant was too broad. It said:

We need not decide in the present case whether the description of the things to be seized would have been too generalized to pass constitutional muster, had the things been weapons, narcotics or "cases of whiskey." * * * The point is that it was not any

contraband of that kind which was ordered to be seized, but literary material—"books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas and the operations of the Communist Party of Texas."

In Berger v. State of New York, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040, 1052 (1967) one of the grounds for overturning the New York wiretapping statute was that it did not limit the conversations to be intercepted to those described in the warrant and thereby gave too much discretion to the executing officer. See also, dissenting opinions in Zap v. United States, 328 U.S. 624, 632, 66 S.Ct. 1277, 90 L.Ed. 1477, 1484 (1946); Gilbert v. State of California, 388 U.S. 263, 286, 87 S.Ct. 1951, 18 L. Ed.2d 1178, 1194 (1967). The context in which the two recent cases cited above were decided cannot be overlooked. Both involved the considerations of privacy and possible self-incrimination in violation of the Fifth Amendment, which is the touchstone of the new approach to Fourth Amendment questions. See generally, Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967). Comment XLI, Notre Dame Lawyer, 1017 (1966).

The paradox which makes this decision so difficult first appeared in *Marron*, supra. There, while holding that the search warrant would not authorize the seizure of the ledger and bills, the Court held that they could be seized incident to the lawful arrest of the defendant. Since then, although the course has not always been smooth,[2] the law of search and seizure incident to an arrest has been continually broadened. In United States v. Harris, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Rabinowitz, 339 U.S. 56,

94 L.Ed. 653 (1950) the Court held that a search incident to an arrest, whether on a warrant or probable cause, was not limited to the accused himself but extended to the area under his control. In *Harris* this meant a sealed envelope in a closed drawer in another room of the apartment occupied by the defendant. In *Rabinowitz* it included the defendant's desk, safe and file cabinets in the room where he was arrested. In *Rabinowitz*, also, the Court held that the officers were not bound to obtain a search warrant even though they had the time and opportunity prior to the search or arrest.

Even more important, the Supreme Court has held that the items seized incident to an arrest are not limited to the instruments of the crime for which the arrest is made. In United States v. Harris, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) the defendant was arrested on a warrant for mail fraud and the agents searched his entire four-room apartment without a search warrant. In the course of the search they found a sealed envelope which contained illegal selective service papers. The seizure of the "draft cards" and the defendant's subsequent conviction for their possession was upheld on the ground that the search and seizure were incident to the defendant's lawful arrest for mail fraud.

In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) the defendant was placed under administrative arrest in preparation for his deportment. Incident to this administrative arrest, prearranged with agents of the F.B.I. who were investigating the defendant on charges of espionage, the agents of the Immigration and Naturalization Service searched the room for evidence of his deportability. In the course of the search, they discovered some evidence or instruments of espionage which were turned over to the F. B.I. The Court again upheld this sei-

---

2. See Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932) and

Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

zure and the conviction resulting therefrom on the ground that the items were obtained in lawful search. From these two cases, it is apparent that the seizure of instruments, and now evidence, of crimes other than the one occasioning the arrest is lawful.

While the Supreme Court has continually broadened the right to search incident to an arrest, there has been no apparent parallel broadening of the right to search pursuant to a warrant. Thus, in the case before this Court, the law enforcement officers would have been justified in searching the premises where Robinson was arrested and seizing the incriminating items. Instead, however, they arrested the defendant and seized only those items on his person and within open view. Later they returned to the premises with a search warrant to conduct a more thorough search for the murder weapon and instruments of the crime. Only then did they find or seize the items in question. If they had been seized at the time of arrest, there would be no question of an illegal seizure. Even the mere evidence rule, which although abolished as a Constitutional doctrine is still embodied in the Federal Rule on Search Warrants (Warden v. Hayden, supra, at p. 251) would have presented little difficulty. See DiMarco v. Greene, 385 F.2d 556 (6th Cir.1967); Malone v. Crouse, 380 F.2d 741, 744 (10th Cir.1967); Jack v. United States, 387 F.2d 471, 474 (9th Cir.1967).

 The officers, however, obtained a warrant and the Court is faced with an array of limitations applicable to warrants, but not to warrantless searches. This, despite the fact that the Supreme Court has said that warrants are always to be preferred over warrantless searches. In United States v. Ventresca, 380 U.S. 102, 106–107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965), upholding a warrant against an attack on the affidavit, the Court said:

The fact that exceptions to the requirement that searches and seizures be undertaken only after obtaining a warrant are limited *underscores the preference accorded police action taken under a warrant as against searches and seizures without one.* (emphasis added.)

See Berger v. State of New York, 388 U.S. 41, 99, 87 S.Ct. 1873, 18 L.Ed.2d 1040, 1075 (1967) (dissent). Instead of preferring search warrants, a rule limiting seizure under them to the items enumerated in the description would relegate them to a secondary status, if not an anachronism in the law. What law enforcement officer would resort to a warrant where there was the possibility of making the search incident to a valid arrest? One who did would be justly chastised by his superiors and the public for incompetence. While it might be possible to describe some of the things sought with sufficient particularity to satisfy a conscientious magistrate, it will never be possible to forecast with any exactitude the items which such a search might reveal. The only reasonable rule, the one which this Court adopts, is that officers conducting a lawful search pursuant to a search warrant may seize any fruits, instruments or evidence of crime which they might uncover. A warrant must still specifically describe the place to be searched and the things to be seized, and the search must be directed toward the things so described, but if in the course of that search they discover items not named in the warrant which might have been seized in a search incident to an arrest, they may also be seized in a search pursuant to a search warrant.

Any other rule would defy logic and the policy of encouraging the use of warrants as enunciated by the Supreme Court. It would only further undermine the confidence of the public and law enforcement officers in the reason, if not the sanity, of the judiciary. For the contrary rule, as apparently established by the *Marron* case, would defeat the use of search warrants and would thereby emaciate, rather than strengthen, the

protection of the public against unreasonable searches and seizures.

This Court is not the first to reach this conclusion. Both the Sixth and Eighth Circuits have arrived at the same rule. In United States v. Eisner, 297 F.2d 595, (6th Cir.1962), cert. den. 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962) the Court of Appeals upheld the seizure of furs stolen in one robbery under a warrant calling for the seizure of furs stolen at another time and place. Citing United States v. Harris, supra, at p. 253, it held that officers lawfully executing a search warrant could seize the fruits of another crime which the search revealed. Likewise, in Aron v. United States, 382 F.2d 965 (8th Cir.1967) the Court upheld the seizure of stolen postage stamps under a warrant calling for the seizure of stolen savings stamps (both of which were stolen in the same robbery) and said, at 382 F.2d 965, 973–974:

We believe that where an officer is proceeding lawfully and making a valid search under a properly issued search warrant and comes upon evidence of another crime being committed in his presence, he is entitled to seize the fruits thereof and testify to the violation he saw committed in his presence. United States v. Eisner, 297 F.2d 595 (6 Cir.1962).

\* \* \* \* \* \*

The balancing of society's interest in law enforcement runs head on into personal rights,—the conflict could be obviated to a considerable extent by more careful and better police practices. Here, however, the search was not a general nor an exploratory one, but one directed against the possession of the fruits of the Longview Branch Post Office burglary.

*Aron* also raised the chief objection to the practical consideration upon which this Court's decision is based—another warrant could have been obtained for the seizure of items not originally named. This was not done and the sei-

zure was properly upheld. To require officers lawfully searching the premises to obtain another warrant for items already discovered would be to emphasize form over reality. No purpose would be served by such a procedure, other than to encumber already burdened law enforcement. If the items were discovered incident to an arrest, no search warrant would be required for their seizure. If such a search is reasonable, certainly one preceded by the intervention of an impartial magistrate is also reasonable and should be upheld.

The Court therefore finds that the seizure of the items enumerated earlier in this opinion, was reasonable and not in violation of the defendant's Constitutional rights, and that the motion to suppress their use as evidence should be denied.

The Court has also considered whether such items could have been legitimately seized as "instruments of the crime" within the meaning of the search warrant and Rule 41. Considering the decision in United States v. Guido, 251 F.2d 1 (7th Cir.1958) which held that a pair of shoes worn during a bank robbery and which were valuable evidence in the case were "instruments of the crime", the Court finds that all the items, with the exception of the 12-guage shotgun, seized here may properly come within that description. Laboratory reports on file with the Court suggest a link between all except the shotgun and the crime. The defendant has not attempted to attack the relevance of the items or tried to show that they were not instruments of the murder. The burden is on him, and absent exceptional circumstances, the Government has no obligation in a motion to suppress to show the connection between the items seized and the crime being prosecuted. See United States v. Pardo-Bolland, 229 F.Supp. 473, 478 (S.D. N.Y.1964); 5 Orfield, op. cit., § 41.54 at p. 744. Although the description in the warrant did not name these items, it included all "instruments of the crime." The items seized come within that de-

scription. Further, the description is not so vague as to invalidate the warrant. It was as specific as circumstances would allow. If officers are to be confined to the description in the warrant, reasonable latitude must be allowed in describing the items sought. So long as the description is as specific as the circumstances of the particular case permit, and probable cause is shown, the warrant will be upheld. To hold otherwise would be to lose all touch with reality and totally defeat the policy of encouraging the use of search warrants. See United States v. Ventresca, 380 U.S., 102–3, 85 S.Ct. 741, 13 L.Ed.2d 684, 688 (1965); Berger v. State of New York, 388 U.S. 41, 99, 87 S.Ct. 1873, 1904, 18 L.Ed.2d 1040, 1075 (1967) (J. Harlan, dissent.)

The Court finds that the search and seizure of the enumerated items was reasonable and not in violation of the defendant's rights. The motion to suppress, previously granted, is now denied, with the exception of the 12-guage shotgun.