THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ SOTO ZARAGOZA, MIGUEL A. APONTE, NICOLÁS A. PÉREZ ROJAS, CARLOS MUÑOZ VELÁZQUEZ, Defendants and Appellants.

No. CR-70-51. Decided March 17, 1971.

740

*Rafael L. Ydrach Yordán* and *Santos P. Amadeo* for appellants.
*Gilberto Gierbolini, Solicitor General,* and *Jorge Ríos Torres*
and *Dolores Ruiz Zambrana, Assistant Solicitors General,*
for The People.

PER CURIAM: Appellants were tried and convicted of
having bolita and/or bolipool material in their possession (33
L.P.R.A. § 1250). Each one of them was ordered to pay a
$1,000 fine.

They assign that the trial court erred:

1.—In denying the motion for the suppression of evidence
because the statement of the undercover agent upon which
the search warrant was grounded is false; said order is un-
reasonable and oppressive, issued without probable cause; it
does not specifically describe the objects to be seized, and
finally, because "the search operation was taken as a subter-
fuge for a police raid since instead of making the detention
when he allegedly saw the bolita material in the hands of a
person, he waited two days in order to do so through a search
warrant."

2.—In convicting appellants on the basis of false and
incredible evidence.

3.—In admitting in evidence the proof product of the
search which instead of being in legal custody was in the
prosecuting attorney's office.

4.—In refusing to grant the defense the right to examine
the sworn statement of a witness for the prosecution who was
waived by the prosecuting attorney at the trial.

Let us see, first of all, the facts of the case.

The sworn statement of officer Padilla which was used as a basis for the issuance of the search warrant is correctly summarized by the Solicitor General thus:

"On Monday, March 11, 1968, at about 11 p.m. while officer Padilla was at the Carolina square, Antonio Ramírez, k/a Toño, with whom the officer had been previously acquainted, went by in a yellow Chevrolet license plates No. 750-373. Antonio Ramírez stopped, they talked for a while and officer Padilla asked him whether he had already gone to the house of an individual named Roque Estrada to collect the bolita material. Ramírez answered him that he had, and that he had it in the car. When the officer asked him where he was going, the latter answered that he was going to the Sabana Garden Development and invited the officer to follow him with his car. Ramírez arrived at Street 18 corner to 19, and alighted. Padilla asked him whether he was going to leave the bolita material there, Ramírez answered in the affirmative and proceeded to take from 20 to 30 rolled lists of paper from the right-hand side pocket of his trousers. Padilla asked him if that was all the material there was, and Ramírez answered that there was enough lists because the numbers that were wagered in those lists amounted to a great amount of money. He opened one of the packages and showed him a list where there were from 15 to 20 three-digit numbers followed by a dash and other numbers to the right, in amounts of 5, 3 and 2 dollars. He arranged the lists again, tied them with rubber bands and went with said lists to residence No. 19, he knocked at the door and a white lady opened it and Antonio Ramírez gave her the lists. Afterwards they went to Stop 18, where a friend of Ramírez was going to give him some tips on horses."

Said officer having been examined by a magistrate in regard to the aforementioned statement, the latter understood that there was probable cause to issue the search warrant which authorized the search of the property in question seeking "everything connected with the illegal game of bolita."

The evidence shows that the day the search was going to take place, Padilla showed the house to other officers of the Vice Squad Division; that they entered the same after they

knocked at the door which was opened for them; that ". . . There they took Miguel Aponte and Nicolás A. Pérez by surprise, sitting in chairs and working on a porcelain table with a great number of lists, three-digit numbers followed by a dash and other amounts to the right. Defendant, Miguel Aponte, operated an adding machine and Nicolás Pérez was working with some lists. At the back part of the room, to the left away from the bed there were three chairs. On one of them defendant, José Soto Zaragoza, operated an adding machine, and facing him on the bed there were a number of lists and packages containing three-digit numbers, dash, and other amounts to the right. On the bed there were a great deal of packages and lists containing three-digit numbers followed by a dash and other amounts to the right. Photographs were taken of the room described and of the exterior of the residence. As a whole, one thousand four hundred and twenty-eight (1,428) lists of paper of different sizes and colors containing three-digit numbers, dashes, spaces, other amounts to the right, others with double dash, single and amounts to the right were seized. Also the following was seized, five hundred and eleven (511) bolipool notebooks, nineteen (19) check lists on the back of which, according to a testifying policeman, by his experience, the individuals write the total of all and each one of the lists of numbers they receive, three boxes of rubber bands, large and small rolls of papers, used for the adding machines, four boxes of clips, paper, red and blue pencils, a brief case which was under appellant, Miguel A. Aponte, a colt revolver, a holster, a license to have and possess a firearm belonging to Carlos Muñoz and a box containing nine revolver bullets."

" . . . . . . . .

"On the person of defendant José Soto Zaragoza, when he was being searched they found two lists of paper which had numbers written on it, a dash, a space, and different amounts

to the right; a cardboard with numbers written on it, a check in the amount of $2,216 of Banco Mercantil issued by some Manuel Fernández Corujo and $886 in cash. All this evidence was in the hands of the officer who conducted the search and it was taken to the Court of Investigations, where it remained in possession of the court.

"Likewise, upon being searched, material connected with the bolita game was found on the person of Miguel Ángel Aponte Hernández."

The evidence for the defense sought to establish the falsity of Padilla's sworn statement on the basis that Antonio Ramírez knew him and was aware of the fact that he was an undercover agent since long before the time when according to Padilla he saw the witness and talked with him about the bolita material which Ramírez was carrying.

1–2. The sworn statement of officer Padilla was sufficient to support the determination of probable cause. *People* v. *Superior Court,* 97 P.R.R. 504, 506, 508 (1969) ; *People* v. *Luciano,* 83 P.R.R. 395 (1961) ; *Edmondson* v. *United States,* 402 F.2d 809, 813 (10th Cir. 1968) ; *Manderosian* v. *United States,* 337 F.2d 759 (1st Cir. 1964) ; *Minovitz* v. *United States,* 298 F.2d 682 (D.C. Cir. 1962).

 Appellants argue that there was no basis to order the seizure of "everything connected with the illegal game of bolita", but certain lists which were the object of visual perception on the part of the officer. We do not agree. In these cases a technical and restricted interpretation of the officer's statement is not necessary. A search warrant where the articles or things to be seized are not mentioned, but the "instruments of the crime", has been sustained. *People* v. *Superior Court, supra.* In *United States* v. *Robinson,* 287 F.Supp. 245 (D.C. Ind. 1968), it was held that:

". . . officers conducting a lawful search pursuant to a search warrant may seize any fruits, instruments or evidence of crime which they might uncover. A warrant must still specifically de-

scribe the place to be searched and the things to be seized, and the search must be directed toward the things so described, but if in the course of that search they discover items not named in the warrant which might have been seized in a search incident to an arrest, they may also be seized in a search pursuant to a search warrant." *Aron* v. *United States*, 382 F.2d 965 (8th Cir. 1967); *United States* v. *Eisner*, 297 F.2d 595 (6th Cir. 1962); *United States* v. *Guido*, 251 F.2d 1 (7th Cir. 1958).

■ The fact that the officer could have arrested Ramírez when he saw him with the bolita material two days before the search does not mean that the search of the house was a detective's scheme and therefore void. We said in *People* v. *Palacios Amador*, 96 P.R.R. 679, 683 (1968), that a search is not unreasonable because an officer has seen some days before the person, whose action gave rise to the search warrant, performing acts which constitute a violation of the law and did not proceed to his immediate arrest.

■■ 3. As the Solicitor General sets forth, the probative force of the evidence does not depend on the place where it was kept before it was introduced at the trial, but on the weighing which the trier makes of the same after it is admitted. During the trial appellant did not object to the admission of any evidence whatsoever on these grounds. He cannot do it on appeal except by revealing exceptional circumstances which do not appear in the record and which appellant did not bring to our consideration.

■ 4. The trial judge did not commit error in refusing to grant to the defense the right to examine the sworn statement made by a witness for the prosecution who was waived by the prosecuting attorney at the trial held on October 8, 1968, and which was made available to appellant because of its cumulative character. The rule we adopted in *People* v. *Quiñones Ramos*, *ante*, p. 1 (decided on April 13, 1970) to the effect of permitting the defense to inspect such sworn statements was not available to appellant at the date of the

trial in this case for it was established that it would take effect as of May 1, 1970.

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on October 24, 1968, will be affirmed.

Mr. Justice Hernández Matos dissented.