## Commonwealth v. Harmon

*Allen Ertel, District Attorney,* and *Carl Bartlett, Asst. District Attorney,* for Commonwealth.
*Peter Campana, Public Defender,* for defendant.

KEMP, *P. J., S. P.*, August 20, 1974—This case is presently before the court on defendant's motions for new trial and in arrest of judgment. Defendant was indicted on six counts of receiving stolen goods. He was tried by the court upon a waiver of jury trial and was found guilty of four counts, viz.: count no. 1 (chicken, hamburg, eggs and shortening or storage can from Lose School); counts nos. 3 and 4 (cigarettes from Macke Company Vending Machines at Hurr's Dairy Store and Fifth Avenue Laundry and Dry Cleaning Center); count no. 5 (money box and contents from Art's Sunoco Gas Station).

On January 16, 1973, at 8:30 p.m. officers of the Williamsport Police Department went to the premises at 521 Eighth Avenue, Williamsport, to obtain the clothing of a runaway juvenile who had been staying there. The officers met Clyde L. Whiteman who allowed the officers to enter the premises. Whiteman was a co-tenant with defendant. One of the officers (Miller) saw a food storage can in the archway. The officer and Whiteman went upstairs to Whiteman's room. Adjacent to the room was a small storage room and in there was a damaged pay telephone.

Two officers (Miller and one other) and Whiteman then went to a magistrate to obtain a search warrant for the premises. Both Miller and Whiteman gave oral testimony to the magistrate. Neither was sworn prior to testifying, however, Miller swore to the affidavit for the search warrant.

With Whiteman's full cooperation, assistance and consent, they went back to the premises and conducted a search. In defendant's bedroom, Miller found a cardboard box containing over 100 packs of cigarettes. In the refrigerator in the kitchen, Miller found a large amount of chicken, hamburg and eggs, a 50-pound commodity can marked "U.S.D.A." containing shortening and eleven cans each of Genesee and Budweiser beer. In a kitchen cupboard he found bandaids. In the cellar he found a pill bottle and a blue name tag with the name "Art" on it in a money box from a coin operated machine. The chicken was in a large plastic bag, weighed thirty pounds and was marked "U.S.D.A.," "Not to be sold or exchanged," and "Used only in certain institutions," and was not in this manner available commercially to individuals. The eggs were in commercial trays holding three dozen eggs each and were not available as packaged to individuals.

Cecelia M. McLaughlin, Food Service Director, Williamsport Area School District, testified that there was a burglary at the Lose School on January 8, 1973, and that some food was discovered missing. She identified the chicken, hamburg, eggs and shortening or storage can as coming from the school.

Whiteman testified that he and defendant each had a key to the premises at 521 Eighth Avenue, Williamsport; that they both lived there and others would stay for a couple of days and then leave; that he gave permission to the officers to enter the premises to obtain the juvenile's clothing; that he had asked defendant about the large number of cigarette packs he saw in defendant's room and

defendant said he wanted to sit down and talk to him about them but never did; that the hamburg and chicken he saw in the refrigerator was a large amount, "unusual," and was just observed by him a night or two after he read of the school burglary of said items.

It was stipulated at trial that on January 12, 1973, there was a burglary of Art's Sunoco Station and that the bandaids, name tag, pill bottle and money were taken from there; sometime prior to January 16, 1973, a case of beer was taken from Pulizzi's Brass Rail Restaurant; on January 12, 1973, a Hurr's Dairy Store and the 5th Avenue Laundry and Dry Cleaning Center were burglarized and among the items taken were cigarettes from Macke Vending Machines at both places and the cigarettes found in defendant's bedroom were from a Macke Company Vending Machine (based on the tax stamp number on the cigarette package).

Defendant was adjudged not guilty on count no. 2 (pay phone), and count no. 6 (beer).

Defendant states as his reason for the motion for a new trial that the court erred in denying defendant's motion to suppress, thereby allowing into evidence the items seized. Defendant argues that since the testimony given to the magistrate was not under oath, the court may look only to the face of the affidavit for the warrant and that the affidavit does not meet the test as stated in Aguilar v. Texas, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

Briefly stated, the test is that the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the items to be seized were where he claimed

they were and some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.

The affidavit states: "AN OCCUPANT OF THE HOUSE WHO PAYS HALF OF THE RENT AND STATED THE GOODS WERE IN THE HOUSEHOLD." Clyde Whiteman is listed as the informant. We find that, even limited to the affidavit, the magistrate could reasonably conclude that a co-tenant of the premises knew what items were at his premises and could rely on such information. Furthermore, Whiteman, the informant and co-tenant with defendant, personally appeared before the magistrate with the officers when the search warrant was obtained. The magistrate had the opportunity to observe the informant and his demeanor to assist him in determining whether there was probable cause.

Assuming, arguendo, that the affidavit alone must supply the probable cause for the issuance of the search warrant, the search warrant is valid.

As the Superior Court stated in Commonwealth v. Crawley, 209 Pa. Superior Ct. 70 (1966), at page 79:

"This magistrate was told that a neighbor who saw appellant move the stolen goods out of the tavern and into his premises informed the police of this fact. Such information volunteered to the police by an eyewitness makes a strong case for its credibility; it suffices to support a finding of probable cause in the mind of a neutral and detached magistrate."

The courts have examined the question of the reliability of an informant. As the Superior Court

stated in Commonwealth v. Bove, 221 Pa. Superior Ct. 345, at 349-350 (1972):

". . . There must, of necessity, be a first time for each informant to supply his information; otherwise no informant could ever become qualified as a reliable source."

It is important to note also what the Superior Court stated in Commonwealth v. Whitehouse, 222 Pa. Superior Ct. 127, at 133 (1972):

". . . It is important, too, that in this case the evidence presented to the magistrate did not come from professional informants, but from ordinary citizens . . . The witnesses lived and worked in the community and their reliability under such circumstances should be assumed."

Furthermore, the court takes judicial notice of the fact that Clyde Whiteman, the informer, was found guilty of the offense of receiving stolen goods, arising out of these circumstances and was sentenced by the court for his participation in the crime for which defendant was convicted. Because of Whiteman's admitted participation in the crime, his reliability is insured insofar as the search warrant is concerned. This was so held in Commonwealth v. Matthews, 446 Pa. 65, at 70 (1971):

"The case law is clear that when a person is an admitted participant in a crime, and the police attempt to secure a warrant upon the information received from him, the second aspect of the Supreme Court's test is met, since the fact that the individual admits participation in the crime insures his reliability." (Cases cited.)

We are satisfied that the magistrate in the instant case had before him sufficient information to determine that the informant had a reasonable basis

for knowing where the goods were and that the informant was reliable.

Counsel for defendant also has contended that the search warrant does not state with particularity the items seized. Defendant waived his right to raise the issue of non-particularity of items sought to be seized since this issue was not raised at the suppression hearing, at trial, in defendant's motion for a new trial or in his motion in arrest of judgment: See Pa. R.C.P. 323(d).

But, in addition thereto, there is no merit in this contention.

In this particular search warrant the items were described as goods taken in various burglaries. This search was not exploratory. In fact, at trial, it was the affiant's testimony that he had already seen some of the items in question when the informant had invited him into the house prior to the search.

It is our responsibility to examine the warrant in a realistic fashion and determine the case by the preference to be accorded warrants. See United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); Commonwealth v. Matthews, supra.

The warrant in the case at bar states that items to be seized were taken from various burglaries. In United States v. Robinson, 287 F. Supp. 245 (N.D. Ind. 1968) the court upheld a similar description of the item to be seized. We agree with the holding at pages 255-6:

". . . Although the description in the warrant did not name these items, it included all 'instruments of the crime.' The items seized come within that description. Further, the description is not so vague as to invalidate the warrant. It was as specific as circumstances would allow. If officers are to be

confined to the description in the warrant, reasonable latitude must be allowed in describing the items sought. So long as the description is as specific as the circumstances of the particular case permit, and probable cause is shown, the warrant will be upheld."

The items that were seized but were not listed on the search warrant were the cigarettes contained in counts nos. 3 and 4. Items that are uncovered pursuant to the execution of a valid search warrant may be seized as fruits of a criminal activity. Since defendant did not raise this issue prior to or at trial, no evidence is before the court as to whether the police had prior knowledge of the burglaries in which the cigarettes were taken.

Officer Miller testified that he entered the residence with the consent of Clyde Whiteman to remove the clothing of one Bonnie Williams and at that time observed a 50-pound commodity can and a damaged Bell Telephone pay telephone. Clyde Whiteman then went with the police while they secured a search warrant and returned with them to the premises while they executed it.

Even if the search warrant was invalid, the evidence would be admissible, because the search was conducted with the consent and aid of the co-tenant of the premises at 521 Eighth Avenue. See for example, Commonwealth v. Battle, 26 Monroe 32 (1968).

More recently, the Supreme Court of the United States in U.S. v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), recognized the validity of third-party consent to a search where the third party possesses common authority over the premises. In the present case, Clyde Whiteman was a co-tenant in the premises, had a key which he used

to unlock the door, aided the police officers in obtaining a search warrant and accompanied the officers when the search was conducted.

Counsel for defendant has attacked the sufficiency of the Commonweath's evidence to support a conviction of receiving stolen property. The only items that are in question are the chicken, hamburg, eggs and shortening or storage can (count no. 1), cigarettes (counts nos. 3 and 4), and a money box and contents (count no. 5).

The evidence at trial concerning count no. 1 established that (1) the burglary at Lose School occurred on January 8, 1973; (2) the 50-pound commodity can was marked "U.S.D.A." and said can was not available in the commercial market to individuals; (3) the 30 pounds of chicken were wrapped in bulk, marked "U.S.D.A.," "Not to be sold or exchanged," and "Used only in certain Institutions," and were not in this manner available commercially to individuals; (4) the eggs were in a commercial tray holding three dozen eggs and were not available packaged as such to individuals; (5) these items were seized from premises occupied by defendant and Clyde Whiteman on January 16, 1973, and (6) the commodity can was seen by officers in the living room and chicken and eggs were found in the refrigerator in the kitchen.

With reference to counts nos. 3 and 4, it was established that: (1) the police officer found over 100 packs of cigarettes in defendant's bedroom in a cardboard box; (2) the cigarettes were from a Macke Company Vending Machine; (3) on January 12, 1973, a Hurr's Dairy Store and the Fifth Avenue Laundry and Dry Cleaning Center were burglarized and cigarettes were taken from Macke Company Vending Machines, and (4) the cigarettes

were found on the premises rented by defendant, in defendant's bedroom, on January 16, 1973.

Relative to count no. 5, it was established at trial that (1) on January 12, 1973, a burglary took place at Art's Sunoco Station at 1023 Park Avenue, Williamsport; (2) that a box of bandaids and a pill bottle with the name "Arthur A. Gibbs" affixed were taken in the burglary and were found at defendant's residence on January 16, 1973; and (3) the bandaids were found in a kitchen cupboard and the pill bottle was found in the cellar.

Ever since Commonwealth v. Owens, 441 Pa. 318 (1970), the knowledge presumption concerning receipt of stolen goods based upon mere possession has been constitutionally infirm. Subsequent cases have then considered what, in addition to possession, is required to show that defendant had knowledge the goods were stolen. In Commonwealth v. Shaffer, 447 Pa. 91 (1972), at page 106, the Supreme Court held that defendant's possession of recently stolen property could support an inference that defendant was one of those responsible for the theft. The court went on to state at page 109:

". . . [W]e look to the following criteria to determine if the inference is valid; the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels."

Further, in Shaffer at page 105, the court held that defendant exercised a conscious dominion or control over the property from the fact that he was the operator of the vehicle, even though he was not the owner of the vehicle, and it was a co-defendant who threw the property out of a car window.

Finally, in Commonwealth v. Henderson, 451 Pa. 452 (1973), the Supreme Court stated, at page 455:

"The element of appellant's guilty knowledge may be established by direct evidence of knowledge or by circumstantial evidence from which it can be inferred that appellant had reasonable cause to know that the property was stolen. . . . Some of the significant circumstances can be the appellant's conduct; the appellant's relationship to the victim; the elapsed time between the appellant's possession and the theft; the situs of the theft and the situs of the possession; the kind of property; the quantity of the property; and the identifying characteristics of the property."

In Henderson the court further pointed out, at page 455, that any number of the listed factors above could give rise to the inference that a defendant knew the property possessed was stolen property. Henderson merely reiterates that possession *alone* is not sufficient to convict.

The Commonwealth presented evidence concerning defendant's intention to explain the large quantity of cigarettes to Clyde Whiteman. The items in count no. 1, are significant because of quantity, identifying characteristics and the unavailability through retail outlets. Time is significant in that there were only ten days between theft and discovery of items in count no. 1. Further, Clyde Whiteman said he saw those items only one or two days after he read about the Lose School burglary. Only four days elapsed between theft and discovery of items in the other counts.

The circumstances as established by the Commonwealth go far beyond mere possession and sustain an inference accepted by the trier of fact that

defendant knew that the items he possessed were stolen.

Counsel for defendant cited Commonwealth v. Schulhoff, 218 Pa. Superior Ct. 209 (1971), for the proposition that since others lived in defendant's home then defendant cannot be found guilty of the possession of the stolen property. There have been a long line of drug possession cases which hold that mere presence where drugs are located is not sufficient to prove possession of a controlled substance. The rationale of this holding can be found in Commonwealth v. Reece, 437 Pa. 422, 427 (1970):

"[Drug possession] by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime."

The Superior Court stated this same rationale in Commonwealth v. Updegrove, 223 Pa. Superior Ct. 7, 9 (1972).

The cases cited by defense counsel which deal with drug possession are inapposite because of the special nature of that crime.

Clyde Whiteman testified that defendant paid the rent on the premises, that he and defendant had keys to the premises, and that the premises were kept locked. These facts would be sufficient to show defendant exercised control over the items found in the premises and would distinguish this case from those where the area in which stolen property was found was equally accessible to others. Cf. Commonwealth v. Davis, 444 Pa. 11 (1971). Davis relied on the fact that there was no evidence that defendant was other than a visitor with the person who had access to the storage closet.

In considering a motion in arrest of judgment, the sufficiency of the evidence is evaluated upon the

entire trial record. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom: Commonwealth v. Tabb, 417 Pa. 13, 16 (1965).

There are three elements to the crime of receiving stolen goods; (1) theft of property prior to defendant's possession; (2) defendant's possession of the property; (3) defendant's knowledge that the property possessed was stolen: Commonwealth v. Henderson, 451 Pa. 452 (1973).

Counsel for defendant has argued that no presumption may arise that from possession alone can he be convicted of this crime since there is no evidence he knew the items had been stolen. He has also contended that he did not have dominion and control over these items since other people had equal access to them.

As to count no. 5, concerning the items allegedly taken from Art's Sunoco Station and found in the cellar, we agree with counsel for defendant that judgment should be arrested as there is no evidence linking defendant to these items.

Based on the following considerations, defendant's motion as to counts nos. 1, 3 and 4, is denied. These considerations are: the elapsed time between defendant's possession and the theft, the kind of property, the quantity of property and the identifying characteristics of the property. See Commonwealth v. Henderson, supra, at page 455 (1973). The food and can of shortening taken from Lose School were discovered in the kitchen by Whiteman a few days after they were stolen. The goods were not available through ordinary commercial means and were of a large quantity—more than the average person would purchase. The

cigarettes were found in defendant's bedroom four days after the burglaries of the two stores. Also, there was a substantial number of packages of cigarettes all bearing the tax number of Macke Vending Machine Company.

## ORDER

And now, August 20, 1974, defendant's motion for new trial is denied and defendant's motion in arrest of judgment as to count no. 5 is granted. Defendant's motion in arrest of judgment as to count nos. 1, 3 and 4, is denied.

Imposition of sentence is deferred pending a pre-sentence investigation by the Pennsylvania Board of Probation and Parole.