THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACQUE TIRADO, Appellant.

First Department, April 3, 1975

*Irving Paul* for appellant.

*Judith K. Rubinstein* of counsel *(Anthony J. Girese* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

STEVENS, P. J. On July 28, 1972, a warrant was issued authorizing the search of Apartment 8B, at premises located at 446 East 86th Street, Borough of Manhattan. The warrant was executed on August 3, 1972, by members of the New York Joint Task Force. On that date, when the officers went to defendant's apartment to execute a "no knock" search warrant, the door was not opened immediately, even after the police identified themselves. It was only while they were attempting to open the door with a K-tool (a type of lockpick)

that a male voice, later identified as that of defendant, said, "Hold it, I'll open the door", which defendant proceeded to do. At that time defendant was bare-chested and wearing a dark pair of pants.

According to the testimony of Officer DeRosa, he gave defendant a copy of the warrant and took him from the foyer area into the living room where three women visitors were seated. It is interesting to note that the three women agreed that all persons had been sitting together in the living room. It was only after the noise at the door that defendant and his brother were observed talking together at or near the door. Obviously, there was a quick shift of location by defendant's brother, for as DeRosa turned around, he saw Special Agent Panessa coming from the direction of the bathroom with defendant's brother, Jose, whom he had found in the bathroom, dressed, and sitting on the toilet bowl.

Officer DeRosa proceeded into the bathroom where he observed a pile of clothing on the floor. While looking through the clothes, he found a bathrobe, containing two clear plastic bags, one in each pocket. These bags were later found to contain cocaine. In the kitchen of the apartment, on the stove, were found a bar of mannitol, and a clear plastic bag containing a white powder — quinine hydrochloride. A strainer and a bowl were found in the sink. According to expert testimony, quinine and mannitol are adulterants customarily mixed with cocaine before it is sold on the streets.

When the officers and their prisoners left the apartment, Special Agent Panessa obtained from defendant the keys to lock the apartment.

On appeal defendant urges that his guilt of possession of drugs and drug paraphernalia was not proved beyond a reasonable doubt.

As defined in subdivision 8 of section 10.00 of the Penal Law " 'Possess' means to have physical possession or otherwise to exercise dominion or control over tangible property." The subdivision "expands the scopes of certain offenses by applying thereto the doctrine of constructive possession of property". (See Denzer and McQuillan, Practice Commentary, McKinney's Cons. Laws of N.Y., Book 39, Penal Law, § 10.00, p 15.) The possession must be both knowing and unlawful. Knowledge may be shown by circumstantial evidence, directly by admissions, or even indirectly by contradictory statements from which guilt may be inferred (People v Reisman, 29 N Y

2d 278, 285). As stated by Chief Judge CARDOZO, although in a different context, "Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance" *(Woloszynowski v New York Cent. R.R. Co.,* 254 NY 206, 208–209).

Evidence in the record established that defendant was the lessee or occupant of the apartment and had control of the premises. His hesitation or reluctance to open the door even after the officers had identified themselves, would permit but not compel an inference that he had something to conceal. The finding of two bags of cocaine approximating 13 ounces in a bathrobe under or in a pile of clothing on the floor of defendant's bathroom permitted the reasonable inference that defendant had both knowledge and possession of the narcotics.

"Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises * * * This of course, is an elemental inference based on common experience and all but universal probabilities. Thus it is an ancient rule of inference or rebuttable presumption of fact that the recent and exclusive possession of the fruits of any crime warrants the inference of guilt, including, when material, knowledgeable possession * * * In the case of contraband its possession is a crime per se, and hence the inference of guilt, that is, knowledgeable possession, is as strong as is the case, for instance, with stolen goods" *(People v Reisman,* 29 N Y 2d 278, 285–286, [per BREITEL, J.]). The court went on to quote with approval the following from *People v Nettles* (23 Ill. 2d 306, 308) "Where narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics. The inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted * * * [T]hey are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters." *(People v Reisman, supra.,* pp 286–287.)

The fact of the presence of the narcotics in the apartment, when considered with the presence in the kitchen, in plain

view, of recognized adulterants and drug paraphernalia, should dispel any doubt of knowledgeable possession by the defendant (cf. *People v Diaz,* 41 AD2d 382). The proximity of the various substances plus defendant's control of the premises support this conclusion. The fact that Jose Tirado was in the bathroom and actually closest to the bathrobe when taken into custody does not negative the presumption, for nothing indicates that Jose was other than a casual visitor. The bathrobe was on the floor with other clothing, and Jose appears to have been fully dressed. Moreover, on any view there was no showing of any connection between Jose and the material found in the kitchen or the sum in excess of $38,000 found in the apartment.

We have considered the other points raised by defendant and find them to be without merit.

The judgment rendered January 9, 1973, in the Supreme Court, New York County (ROSENBERG, J.) convicting defendant after a jury trial of criminal possession of a dangerous drug in the second degree and criminally using drug paraphernalia in the second degree should be affirmed.

MURPHY, J. (dissenting). Appellant is presently serving an 8-to-25-year indeterminate sentence following his conviction, after a jury trial, of criminal possession of a dangerous drug in the second degree and criminally using drug paraphernalia.

Shortly before midnight on August 3, 1972, several members of the New York Joint Task Force executed a previously obtained warrant authorizing the search of defendant's apartment on East 86th Street in Manhattan. After defendant unlocked the door, the officers entered and found therein, in addition to defendant, three women sitting on a couch in the living room and defendant's brother, Jose Tirado, "sitting on the bowl" in the bathroom. In the pockets of a bathrobe lying on the bathroom floor the officers found two plastic bags containing approximately 13 ounces of cocaine. Searching further, the officers found quantities of drug adulterants and other drug paraphernalia; and a large sum of cash.

After receiving an unexceptionable charge from the trial court, including the standard to be applied when circumstantial evidence is relied upon to support a guilty verdict, the jury retired to deliberate. Shortly thereafter the jurors presented the following inquiry: "Does the sole fact that narcotics

are found present in the apartment of the defendant constitute possession?"

The court responded: "no", and then repeated, briefly, its instructions regarding constructive possession and circumstantial evidence. After the jury again retired to deliberate, the court refused the People's request for "the charge found in *Reisman" (People v Reisman,* 29 N Y 2d 278) on the ground that the facts in *Reisman* were distinguishable and the "charge" requested dictum.

Approximately two and one-half hours later, an obviously still disturbed jury asked the court to reread its charge, define the reasonable doubt concept and "expound on the laws of circumstantial evidence". After some colloquy among the Trial Judge, the prosecutor and defense counsel, the court, after differentiating between physical and constructive possession, over defendant's objection, advised the jurors, *inter alia:*

"Possession may, in addition, be either joint or individually, or individual or joint. If you find either a physical possession by the defendant or a constructive possession of the defendant was a possession that he shared with others, you may find that he was in joint possession of that property with the others.

"Joint possession is the possession of each of those who jointly possess the property. The fact that others may have jointly possessed property with the defendant would not make his possession any the less possession within the meaning of the Penal Law.

"The joint possession is the possession of each of those who jointly possess property."

\*     \*     \*

"In other words, possession may be physical possession or constructive possession. Constructive possession is possession just as much as physical possession. Joint possession is possession of all who jointly possess."

Thirty minutes later, the jury returned a verdict of guilty.

In my view, the portion of the supplemental charge dealing with joint possession was clearly erroneous. The instant indictment was filed against defendant alone. Defendant was not charged with jointly possessing the narcotics and the paraphernalia with his brother, or any of the three women found in his apartment.

In the case at bar, actual physical possession, by anyone,

was not established. The cocaine was found in the pockets of a bathrobe lying on the floor of the bathroom. The bathroom had been occupied by defendant's brother, Jose, when the police arrived and threatened to "blow the locks off" the door if it was not opened. To instruct the jury, under such circumstances, that defendant could be convicted if they believed he jointly possessed the contraband with his brother, Jose, or anyone else, was prejudicial error.

The presumption of knowing possession applicable to the presence of a controlled substance in an automobile has never been statutorily or judicially extended to premises. (Penal Law, § 220.25, subd. 1; see, also, Penal Law, § 265.15 with respect to presumptions of possession applicable to firearms and other dangerous weapons.)

Even *People v Nettles* (23 Ill. 2d 306, 308–309), cited with approval in *People v Reisman (supra)* and relied on so heavily by respondent, held: "Where narcotics are found on premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which *may* be sufficient to sustain a conviction for unlawful possession of narcotics, *absent other facts and circumstances which might leave in the mind of the jury * * * a reasonable doubt as to his guilt.*" (Emphasis supplied.)

That the jurors had such a reasonable doubt in this case is manifest from the questions they asked. Only the improper charge as to "joint possession" dispelled such doubt; and permitted them to then heed the court's proper instruction regarding the standard to be satisfied in order to sustain a conviction which, as here, depends exclusively on circumstantial evidence. *(People v Williams* , 35 N Y 2d 783; *People v Cleague,* 22 N Y 2d 363.) In sum, the circumstantial evidence adduced in this case does not establish defendant's guilt by "overwhelming proof"; and, in my view, there is a "significant probability" that appellant would have been acquitted had it not been for such error in the charge. *(People v Crimmins,* 36 NY2d 230, 242.)

In light of the foregoing, the judgment appealed from should be reversed and a new trial directed.

MARKEWICH, CAPOZZOLI and NUNEZ, JJ., concur with STEVENS, P. J.; MURPHY, J., dissents in an opinion.

Judgment, Supreme Court, New York County rendered on January 9, 1973, affirmed.