JACQUE TIRADO, A.K.A. JACQUE DANTE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3868–74.     Filed April 10, 1980.

*Stuart E. Abrams,* for the petitioner.
*Larry Kars* and *Elizabeth D. DePriest,* for the respondent.

TANNENWALD, *Judge:* This case is before us on petitioner's motion to suppress evidence on the ground that his Fourth Amendment rights were violated during the search in which the evidence was obtained.

### FINDINGS OF FACT

Some of the facts have been stipulated for the purposes of this motion and are found accordingly. The stipulations of facts and the stipulated exhibits are incorporated herein by this reference.

At the time the petition herein was filed, petitioner was incarcerated at the Clinton Correctional Facility, Dannemora, N.Y.

On July 28, 1972, a warrant authorizing the search of apartment 8B at 446 East 86th Street, New York, N.Y., was issued by the Supreme Court of the State of New York, New York County, on the basis of an affidavit executed by Patrolman John DeRosa of the New York Joint Task Force (hereinafter task force).[1] That affidavit stated in relevant part:

---

[1]DeRosa was a patrolman in the New York City Police Department, assigned to the task force. The task force was a law enforcement unit composed of Federal agents from the Bureau of Narcotics (a part of the Department of Justice), New York State police, and New York City police.

2. I have received information from a reliable informant who has given information in the past resulting in 2 indictments in narcotic cases, wherein narcotics were bought, and whose identity and record of reliability is being revealed to the Court which determines whether or not to grant this application, that one, "Joaquin" Tirado——described by my informant as a male, N, approx. 30, 5'10", 180 lbs,——occupying an apartment described as 8B——in premises 446 E. 86th Street,——New York County, is in possession of narcotic drugs——thereat. My informant further stated that on July 28, 1972, my informant was in the aforementioned apartment with "Joaquin" Tirado present and did see a quantity of narcotic drugs thereat. My informant further states that "Joaquin" Tirado trafficks in narcotic drugs principally during the nighttime.

3. In view of the above, there is probable cause to believe that the warrant cannot be successfully executed in the daytime.

4. Based upon the foregoing reliable information, I believe that "Joaquin" Tirado, occupying an apartment described as 8B——in premises——446 E. 86th St., New York City, is in possession of narcotic drugs thereat.

WHEREFORE, I respectfully request that the Court issue a warrant and order of seizure in the form annexed, authorizing the search of an apartment described as 8B——in premises 446 E 86th St.,——New York County, occupied by "Joaquin" Tirado, and of the person of "Joaquin" Tirado, and of any other person who may be found therein to have such property in his possession or under his control or to whom such property may have been delivered, for narcotics——and directing that if such property or evidence or any part thereof be found that it be seized and brought before the Court; together with such other and further relief that the Court may deem proper.

In view of the fact that the property sought to be seized is narcotics and therefore can be easily and quickly disposed of, it is respectfully requested that the officer executing the warrant be permitted to enter without prior notice of authority and purpose pursuant to Section 690.35 of the Criminal Procedure Law.

The warrant provided:

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY PEACE OFFICER IN THE CITY OF NEW YORK.

\*     \*     \*     \*     \*     \*     \*

YOU ARE THEREFORE COMMANDED, during the day or night time, without prior notice of authority and purpose, pursuant to Section 690.35 of the Criminal Procedure Law, to make an immediate search of an apartment described as 8B——in premises 446 E. 86th St.,——New York County, occupied by "Joaquin" Tirado and of the person of "Joaquin" Tirado and of any other person who may be found therein to have such property in his possession or under his control or to whom such property may have been delivered, for narcotics——the means of committing a crime or offense, and the means of preventing a crime or offense from being discovered, and if you find any such property, or any part thereof to bring it before me at the Criminal Courts building in New York County.

THIS WARRANT MUST BE EXECUTED WITHIN TEN (10) DAYS OF

DATE ISSUANCE AND RETURNED WITHOUT UNNECESSARY DELAY.

The warrant was executed on August 3, 1972, at approximately 11:15 p.m., in a search conducted by five members of the task force—Special Agents Alexander Smith and Frank Panessa of the Federal Bureau of Narcotics, Detectives Patrick Campbell and Arthur Dolan of the New York City Police Department, and Patrolman DeRosa. Present in the apartment were petitioner, his brother, and three females. Within 5 minutes after the apartment was entered, two clear plastic bags containing a white powder, which was later determined to be cocaine, were found in a bathrobe on the bathroom floor of the apartment, at the feet of petitioner's brother. The brother was immediately placed under arrest and taken into the living room, where petitioner and the women were also arrested. Petitioner was arrested for possessing and trafficking in drugs. Petitioner was placed in handcuffs. Special Agent Panessa then read the arrested persons their *Miranda* rights.[2]

The search of the apartment continued, and $23,000 was found in an attache case in the bedroom, another $15,100 was found in a shoebox in the bedroom, and approximately $765 was found on petitioner's person. During the course of the search, the items seized included the following in addition to the items previously specified:

a. A bar of a substance known as "mannite."

b. A clear plastic bag containing a white powder which was later determined to be quinine hydrochloride.

c. A strainer and a white plastic bowl.

d. Rent receipts and notices for the apartment.

e. A lease between Jacque Tirado and Parew Realty Corporation.

f. A notice from Chemical Bank with respect to the rental of a safe-deposit box.

g. Bank statements relating to a Chemical Bank account.

h. A savings account passbook at Chase Manhattan Bank, St. Thomas, Virgin Islands.

i. Parking tickets concerning two Rolls Royce automobiles.

j. Four safe-deposit keys.

k. A social security card.

l. A brown and white striped robe.

m. A .22 caliber Winchester rifle.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444–445 (1966).

The items seized were considered by the officers as evidence of possession of, and trafficking in, drugs.

One or two days after the search, Panessa met with Eugene Moran, an agent of respondent, to discuss the results of the search. Between August 3, 1972, and August 24, 1972, Smith met with Moran and disclosed to him the materials seized.

After the search, Smith conducted an interview with an official of the branch of the Chemical Bank located at 453 East 86th Street, New York, N.Y. The official disclosed that one of the safe-deposit keys was for box number 1335 at that branch, which was registered to Jacque Tirado. In addition, he stated that the petitioner had previously asked him to notarize a bill of sale for a Rolls Royce automobile. As a result of this information, and based on the safe-deposit box rental notice and statements from Chemical Bank, and the safe-deposit box keys, Smith obtained a search warrant for "currency, securities, deeds, and other papers evidencing ownership of property," in safe-deposit box number 1335 at the Chemical Bank. Upon execution of the warrant, he seized $10,000 in U.S. currency and numerous articles of jewelry.

Based upon the savings account passbook at Chase Manhattan Bank, St. Thomas, Virgin Islands, and the safe-deposit keys, Smith obtained a search warrant for "currency, securities, deeds and other papers evidencing ownership of property, jewelry and other valuables," in a safe-deposit box at said bank. Upon execution of the warrant, he seized $15,000 in U.S. currency. Smith used the parking tickets concerning two Rolls Royce automobiles to learn the registration numbers of the two Rolls Royce automobiles registered in the name of Jacque Tirado.

On August 30, 1972, an indictment was returned charging petitioner with two counts, each in the second degree, under New York law: (a) Criminal possession of a dangerous drug; (b) criminal use of drug paraphernalia. Following a hearing on petitioner's motion to controvert the search warrant and suppress certain evidence seized under the warrant, the State court found the affidavit of Patrolman DeRosa sufficient to establish probable cause for the warrant issued July 28, 1972. The court suppressed the rent receipts and notices, the lease between petitioner and Parew Realty Corp., and the Chemical Bank notice with respect to the safe-deposit box rental. The court did not consider the Chemical Bank bank statements, the

savings account passbook for the Virgin Islands bank, the safe-deposit keys, and the social security card. The cocaine, mannite, strainer and plastic bowl, cash,[3] robe, and rifle were not suppressed.[4] On December 12, 1972, the jury found the petitioner guilty on both counts. He was sentenced to an indeterminate period of imprisonment for the maximum term of 25 years. The court imposed the minimum period of 8 years. His conviction was affirmed by the Appellate Division of the Supreme Court of the State of New York, First Department, on April 3, 1975 (47 App. Div. 2d 193, 366 N.Y.S.2d 140), and by the New York Court of Appeals on March 23, 1976 (38 N.Y. 955, 384 N.Y.S.2d 151).

## OPINION

Petitioner has moved to suppress the evidence seized by the task force, consisting of currency, bank books, bank statements, safe-deposit keys, a lease, automobile parking tickets, rent notice slips, and the fruits thereof, stemming from the subsequent

---

[3]The amount of the currency was stipulated, and this stipulation was presented to the jury, in lieu of the physical evidence.

[4]The record does not indicate the action taken by the State court in respect of the quinine hydrochloride, but the gap is without significance, since petitioner's motion does not extend to this item and, in any event, the item does not appear to be the subject matter of any portion of the notice of deficiency. The notice of deficiency asserted a deficiency of $47,793.41 plus additions to tax for delinquency, negligence, and estimated tax, based upon the following explanation:

(a) It is determined that for the year 1972 you had unreported income as follows:

| | |
|---|---:|
| Cash (seized Aug. 3, 1972) | $38,865.00 |
| Cash (seized in Chemical Bank safe-deposit box) | 10,000.00 |
| Jewelry (seized in Chemical Bank safe-deposit box) | 10,000.00 |
| Cash (seized in Virgin Island safe-deposit box) | 15,000.00 |
| Savings account, 1972—Virgin Islands Chase Manhattan account No. 719–029350—1 | 1,000.00 |
| Purchase of a 1969 Rolls Royce (Chester Motors) | 7,000.00 |
| Repair of a 1961 Rolls Royce (Rollston Motors) | 604.55 |
| Rent at $312.50 for 12 months | 3,750.00 |
| Western Union money order | 156.21 |
| Automobile insurance | 197.00 |
| | 86,572.76 |
| *Add: Estimated expenditure of income* | |
| Food at $30 per week | 1,560.00 |
| Automobile expense (oil and gas) | 450.00 |
| Miscellaneous (utilities, etc.) | 1,300.00 |
| Cost of 406.15 grams of cocaine | 4,200.00 |
| Jamaica savings account No. RS1220615 (interest) | 12.76 |
| Total | 94,095.52 |

(b) and (c) It is determined that you are entitled to a standard deduction of $2,000 and a personal exemption of $750 for the year 1972.

searches of the safe-deposit boxes. He does not attack the warrant as such, nor the seizure of the narcotics, other substances, or drug paraphernalia. Rather, he contends that the seizure of the items which are the subject of the motion to suppress was not within the scope of the original search warrant, and that no exigent circumstances existed which would justify a warrantless seizure of such items. Cf. *United States v. Jones*, 518 F.2d 384, 388 (7th Cir. 1975). He argues, therefore, that the items in question were seized in violation of his Fourth Amendment rights and that, as a consequence, such items and any fruits obtained therefrom must be excluded from evidence at the trial herein.[5]

Respondent contends that the items were within the scope of the warrant and therefore validly seized. Alternatively, he argues that their seizure was incident to an arrest and therefore justified even if beyond the scope of the warrant. Finally, he asserts that, even if we find that some of the items were illegally seized, it would be inappropriate to apply the exclusionary rule in the instant case.

The temptation to dissect in detail the cases—almost limitless in number—dealing with the application of the Fourth Amendment to searches and seizures is great. The judicial history in the Supreme Court alone, running from *Boyd v. United States*, 116 U.S. 616 (1886), and *Weeks v. United States*, 232 U.S. 383 (1914), through *Marron v. United States*, 275 U.S. 192 (1927), *Stanley v. Georgia*, 394 U.S. 557 (1969), and *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), to *Andresen v. Maryland*, 427 U.S. 463 (1976), and *Dunaway v. New York*, 442 U.S. 200 (1979)—to mention only a few of the cases decided by that Court—is, at best, uneven.[6] Our review of that history, as well as numerous decisions by lower courts involving the permissible constitutional limits of search and seizures, has convinced us that, since each

---

[5]In view of the thrust of petitioner's motion, we need not face the issue of severability in the event that we should find that some of the items were illegally seized. See, e.g., *Quandt Brewing Co. v. United States*, 47 F.2d 199 (2d Cir. 1931); *United States v. Mendoza*, 473 F.2d 692, 696 (5th Cir. 1972); *United States v. Burch*, 432 F. Supp. 961 (D. Del. 1977); *People v. Niemczycki*, 67 App. Div. 2d 442, 415 N.Y.S.2d 258, 260 (2d Dept. 1978).

[6]Compare, e.g., *Warden v. Hayden*, 387 U.S. 294 (1967), overruling in respect of the seizure of "mere evidence" *Gouled v. United States*, 255 U.S. 298 (1921), and *Chimel v. California*, 395 U.S. 752 (1969), overruling in respect of the area of permissible seizure *Harris v. United States*, 331 U.S. 145 (1947), and *United States v. Rabinowitz*, 339 U.S. 56 (1950).

case depends upon its own facts and circumstances (*Chimel v. California*, 395 U.S. 752, 765 (1969); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931); cf. *Delaware v. Prouse*, 440 U.S. 648, 654 (1979); see also *People v. Baker*, 23 N.Y.2d 307, 296, N.Y.S.2d 745 (1968); *People v. Mangialino*, 75 Misc. 2d 698, 348 N.Y.S.2d 327, 341 (Monroe County Ct. 1973)), a detailed dissection would serve no useful purpose. Accordingly, we will simply draw upon the decided cases to the extent that they seem to us to bear upon the particular problems which confront us herein, keeping in mind that the mandate of the Fourth Amendment[7] retains its originally intended strong and pervasive vitality (see *Dunaway v. New York, supra*) and the admonition in *Marron v. United States*, 275 U.S. at 196, that—

[the] requirement that warrants shall particularly describe the things to be seized makes general searches under valid warrants impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

Initially, we think it useful to delineate several parameters within which our approach will be applied:

(a) It seems clear that, although a State search warrant is involved, Federal officers participated in the search. Moreover, the degree of involvement of the Federal officers was more than sufficient to constitute it a Federal search. Cf. *Lustig v. United States*, 338 U.S. 74 (1949); *Gambino v. United States*, 275 U.S. 310 (1927). As a result, and in view of the fact that this is a Federal action, Federal standards of law should be applied to determine whether the claimed suppression is appropriate herein. *Oregon v. Hass*, 420 U.S. 714, 719 (1975); *Byars v. United States*, 273 U.S. 28, 32–34 (1927); *United States v. Martin*, 600 F.2d 1175, 1180 (5th Cir. 1979); *United States v. Bedford*, 519 F.2d 650, 653–654 (3d Cir. 1975). Admittedly, there are some cases which seem to apply Federal or State standards, whichever are stricter, and which distinguish between suppression issues involving mere procedural errors as against an invasion of individual rights. See, e.g., *United States v. Sotomayor*, 592 F.2d 1219 (2d Cir. 1979), and

---

[7]The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

cases collected therein. See also *United States v. Manfredi*, 488 F.2d 588, 598 n. 7 (2d Cir. 1973). We find it unnecessary, however, to delve into the various refinements which are reflected in the decided cases, because we are satisfied that, in the context of this case, there are no significant differences between the Federal and New York standards utilized in determining the validity of seizures either pursuant to a validly issued warrant or as an incident to a lawful arrest.[8] In this connection, we observe that the decisions of the New York court in the State suppression hearing are not binding either upon respondent, who was not a party to the State proceeding (*United States v. Panebianco*, 543 F.2d 447, 456 (2d Cir. 1976)), nor upon us (*Oregon v. Hass, supra; Suarez v. Commissioner*, 58 T.C. 792, 807 (1972)).[9]

(b) Although the warrant speaks only of "narcotics," and the affidavit makes reference to "possession of narcotics," the latter also alleges that petitioner "traffics in narcotics" and asks that the warrant authorize the search of "any other person to whom such property [narcotics] may have been delivered." Moreover, the petitioner was arrested for possession and trafficking in drugs. In determining the scope of the warrant, we are entitled

---

[8]Sec. 41(b) of the Federal Rules of Criminal Procedure provides:

"Property Which May Be Seized with a Warrant. A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as a means of committing a criminal offense."

Sec. 690.1U, N.Y. Crim. Pro. Law (McKinney 1971), provides:

"Personal property is subject to seizure pursuant to a search warrant if there is reasonable cause to believe that it:

"1. Is stolen; or

"2. Is unlawfully possessed; or

"3. Has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; or

"4. Constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of the offense."

See *People v. Baker*, 23 N.Y.2d 307, 296 N.Y.S.2d 745, 752–754 (1968), *People v. Mangialino*, 75 Misc.2d 698, 348 N.Y.S.2d 327 (Monroe County Ct. 1973), and other New York cases cited in the course of this opinion.

[9]We note that the transcript of the State court proceeding was not furnished to us. The parties merely stipulated how the State court disposed of the issues of suppression before it. We also note that several of the items subject to the instant motion were not involved in the State proceeding.

to read the warrant and the accompanying affidavit together.[10] *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976); *United States v. Thompson,* 495 F.2d 165, 170 (D.C. Cir. 1974); *People v. Sanchez,* 53 Misc. 2d 672, 279 N.Y.S.2d 836, 838 (N.Y. Crim. Ct. 1967). See *People v. Green,* 33 N.Y.2d 496, 499, 354 N.Y.S.2d 933, 935 (1974). In the process, we are entitled to apply a "practical accuracy" standard. See *United States v. Johnson,* 541 F.2d at 1313–1315. Cf. *United States v. Ventresca,* 380 U.S. 102 (1965). We are not unaware of the fact that the warrant used broad language—"the means of committing *a* crime or offense, and the means of preventing *a* crime or offense from being discovered." (Emphasis supplied.) However, we interpret this language as being limited to items, i.e., "means," of committing or concealing the crimes of possession or sale of narcotics, i.e., "trafficking in drugs" (cf. *Andresen v. Maryland, supra;* compare *United States v. Burch,* 432 F. Supp. 961 (D. Del. 1977)), and, consequently, the search involved herein was not an unconfined search condemned in its entirety by the Fourth Amendment (see, e.g., *Coolidge v. New Hampshire, supra; Stanley v. Georgia,* 394 U.S. at 572 (1969) (concurring opinion of Mr. Justice Stewart)).[11] In short, even within the confines of the narrow construction of warrants mandated by *Marron v. United States, supra* (see also *People v. Baker,* 23 N.Y.2d 307, 296 N.Y.S.2d 745 (1968)), we conclude that we are entitled to examine each item subject to the instant motion to suppress in terms of its relationship to the crime of possession or sale of (i.e., "trafficking" in) drugs. See *Warden v. Hayden,* 387 U.S. 294, 307 (1967); *Preston v. United States,* 376 U.S. 364, 367 (1964) ("destruction of evidence of crime"); *Marron v. United States,* 275 U.S. at 199 ("things used to carry on the criminal enterprise"). Cf. *United States v. Thompson, supra.* See also *People v. Pacella,* 47 App. Div. 2d 711, 364 N.Y.S.2d 258 (4th Dept. 1975); *People v. Mangialino,* 348 N.Y.S.2d at 336 ("sufficiently associated").

---

[10]The affidavit uses the phrase "property *or evidence.*" (Emphasis added.) See p. 15 *supra.* The affidavit was attached to the warrant stipulated by the parties, and petitioner makes no claim that the warrant was not served upon him or that, though served, the affidavit was not attached at the time of service.

[11]Nor does it involve, as our subsequent discussion reveals, the legitimacy of the seizure of items not described in the warrant and relating to a different criminal offense. See *United States v. Hamilton,* 328 F. Supp. 1219 (D. Del. 1971); *United States v. McDonnell,* 315 F. Supp. 152, 167–168 (D. Neb. 1970); *United States v. Robinson,* 287 F. Supp. 245, 254 (N.D. Ind. 1968). Compare *Dudley v. United States,* 320 F. Supp. 456, 460–461 (N.D. Ga. 1970).

In determining this relationship or nexus, we will look to the reasonableness of the action of the law enforcement officials in seizing the items, taking into account the nature of the items seized and the crimes allegedly involved. *Cady v. Dombrowski,* 413 U.S. 433, 439 (1973); *United States v. Ventresca, supra* ("will end in a particular apprehension or conviction"); *United States v. McDonnell,* 315 F. Supp. 152, 169 (D. Neb. 1970); *United States v. Robinson,* 287 F. Supp. 245, 256 (N.D. Ind. 1968). In so stating, we recognize that good faith of the enforcement officials is not to be equated with reasonableness, and that the presence of the former attribute is not, in and of itself, enough. *Application of Commercial Investment Co.,* 305 F. Supp. 967, 970 (S.D. N.Y. 1969); cf. *Terry v. Ohio,* 392 U.S. 1, 22 (1968).

(c) There is obviously a considerable, if not complete, overlap between the scope of the warrant, as we have interpreted it, and the scope of the reasons for petitioner's arrest. Given this confluence, we find it unnecessary to delve deeply into the distinctions which the courts have drawn between the standards applicable to determining the scope of a warrant as contrasted with those utilized in determining the validity of seizures incident to an arrest—an area in which the decided cases are fraught with confusion. See *Chimel v. California, supra; Coolidge v. New Hampshire, supra; Aguilar v. Texas,* 378 U.S. 108, 111 (1964); *United States v. Dzialak,* 441 F.2d 212, 216–217 (2d Cir. 1971); *United States v. LaVallee,* 391 F.2d 123 (2d Cir. 1968); *People v. Baker, supra.* Compare *United States v. Hamilton,* 328 F. Supp. 1219, 1221 (D. Del. 1971); *United States v. Robinson,* 287 F. Supp. at 254–255. See generally A. Amsterdam, "Perspectives on the Fourth Amendment," 58 Minn. L. Rev. 349 (1974); J. G. Cook, "Requisite Particularity in Search Warrant Authorizations," 38 Tenn. L. Rev. 496 (1971).

With the foregoing parameters in mind, we turn to an examination of the particular items seized and to which the instant suppression motion is addressed.

(1) *Rent receipts and notices and lease.*—At the hearing on the motion, petitioner refused to admit the legal relationship between him and the apartment, and the Court directed that it be assumed that it was his apartment solely for the purpose of avoiding any issue as to standing. It seems clear to us that these items were relevant to establishing that the area searched was under petitioner's control as an element of proof that the

narcotics seized were possessed by him and not someone else—a necessary element of the criminal prosecution. See *People v. Tirado*, 47 App. Div. 2d 193, 366 N.Y.S.2d 140, 143 (1st Dept. 1975). Such being the case, they were properly seized.[12] *United States v. Thompson*, 495 F.2d at 169;[13] *United States v. Smith*, 462 F.2d 456, 460–461 (8th Cir. 1972).

(2) *Cash in the apartment.*—Cash, at least in the amounts seized, is relevant as evidence of capacity either to purchase (and therefore possess) narcotics or of the proceeds of the sale thereof (i.e., "trafficking"). Concededly, the cash could have been the fruits of another crime or even of honest toil, but we think that, under the circumstances herein, it falls within the scope of the phrase "means of committing a crime," as used in the warrant, or constitutes evidence of an incriminating nature having a sufficient nexus to the alleged crimes for which petitioner was arrested. *United States v. Jones*, 518 F.2d 384, 386, 389 (7th Cir. 1975) (some, but not all, of the cash was marked and identification did not occur until later). See *United States v. Golay*, 502 F.2d 182 (8th Cir. 1974). Cf. *Marron v. United States*, 275 U.S. at 199; *United States v. One 1965 Buick*, 392 F.2d 672, 679 (6th Cir. 1968) (money as an instrument of gambling). Cf. also *United States v. Viserto*, 596 F.2d 531, 536–537 (2d Cir. 1979); *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir. 1975); *United States v. French*, 545 F.2d 1021 (5th Cir. 1977). Given such nexus, the cash was not an inherently neutral item, as petitioner contends—a characterization which might have brought such item within the ban of "innocuous" or "not apparent." See *United States v. Dichiarinte*, 445 F.2d 126, and particularly 129 n. 2 (7th Cir. 1971);[14] *Porter v. United States*, 335 F.2d 602, 607 (9th Cir. 1964); *United States v. Burch, supra.*

(3) *Bank statements and savings account passbook.*—Money in

---

[12]We note that the petition states that the apartment was his at the time of the arrest, but we do not consider this after-the-fact admission a sufficient foundation for the fact in question. We further note that petitioner does not raise any question that the seizing officers went beyond their authority in terms of the area searched. See *Chimel v. California*, 395 U.S. 752 (1969).

[13]Admittedly, the warrant in *Thompson* used the word "records," but we do not read the opinion in that case as concluding that, without that word, the leases and rent receipts involved therein would have been illegally seized.

[14]In that case, the court excluded currency exchange receipts and other papers which were the results of a search incident to an arrest pursuant to a warrant based on an indictment on the charge of sale of narcotics. The terms of the warrant were not set forth in the court's

the bank is essentially the equivalent of cash. Thus, our analysis as to the nexus involving the currency in the apartment is equally applicable to these items. Indeed, one could argue that the removal of the cash from petitioner's person or from the apartment via bank deposits constitutes, to use the language of the warrant, a "means of preventing a crime or offense [involving, if not the possession of, at least the trafficking in, narcotics] from being discovered." In view of the foregoing, we think it was reasonable for the enforcement officers to have seized these items.

(4) *Safe-deposit keys and notice of safe-deposit box rental.*—The affidavit for the warrant stated that the officers had information indicating that petitioner was engaged in trafficking in narcotics. Agent Panessa stated at the hearing that it was his experience that narcotics dealers use safe-deposit boxes to store large quantities of narcotics and cash so as not to be "ripped off" by other dealers. It seems obvious that safe-deposit boxes would be likely to be used in this fashion. Thus, the keys would be a ticket to the possible discovery of narcotics or cash which were being concealed. Narcotics would clearly be within the scope of the warrant or as an incident to the alleged crimes for which petitioner was arrested. Any cash would, in accordance with our previous analysis, fall within this category. The notice of the safe-deposit box rental constitutes simply an instrument incident to the keys—indeed, an important instrument for purposes of identification of the keys with the box—and is not entitled to any different treatment. To be sure, the boxes could not be entered without a further search warrant (see *United States v. Martin*, 600 F.2d at 1184; *United States v. Dzialak*, 441 F.2d at 217), but such warrants were obtained, and petitioner has not contended that they did not have the requisite specificity. Accordingly, we conclude that the necessary nexus has been established, and that the seizure of the keys (with the consequent seizure of the currency and jewelry found in the boxes) was reasonable and therefore not precluded by the Fourth Amendment.[15]

---

opinion, the court pointed out that "there was no indication that they [the arresting officials] desired to look for anything other than narcotics themselves" (see 445 F.2d at 129), and the main issue in the case was whether the accused had consented to the search.

[15]We do not deem important the fact that cash and jewelry, rather than narcotics, were

(5) *Parking tickets.*—We think it obvious that automobiles are vehicles used in narcotics operations and that, like the safe-deposit boxes, they are likely receptacles for the storing—albeit perhaps only on a temporary basis—of narcotics and even the proceeds of the sale of or "trafficking" in narcotics. In this context, we think the seizure of the parking tickets falls in the same category as the safe-deposit box keys and rental notices, i.e., a reasonable source for obtaining evidence of the offense of possession of narcotics or the means of committing offenses arising out of trafficking therein or the concealment of the commission of such offenses. Accordingly, we conclude that there was a sufficient nexus between the tickets and the language of the warrant, as we have interpreted it, or the alleged crimes for which petitioner was arrested to make their seizure reasonable and not precluded by the Fourth Amendment. Cf. *United States v. Teller*, 412 F.2d 374, 379 (7th Cir. 1969) (index cards containing license plate numbers of narcotics agents validly seized).

Petitioner argues that the seizure of the currency, bank statements, savings-account passbook, safe-deposit keys, and safe-deposit box rental notice should be declared illegal because the officers should have specified them in the warrant. *Coolidge v. New Hampshire, supra; United States v. Clark*, 531 F.2d 928 (8th Cir. 1976). He claims that respondent is "hoisted by his own petard" in arguing both that the discovery of these items was inadvertent and that the officers were aware that narcotics dealers often possessed large sums of currency. Petitioner oversimplifies the requirements for a warrant. The knowledge that persons trafficking in narcotics often have large sums of cash and use bank facilities (e.g., safe-deposit boxes and savings accounts) may not have been sufficient to establish, at the time the warrant was obtained, that the particular individual to be searched (petitioner), or his premises, would necessarily reveal such evidence. Our prior discussion, as well as commonsense, dictates that when the cash was discovered, the mere fact that

---

subsequently discovered in the boxes. The determination of whether it was proper to seize the items in question is based on what occurred at the time the warrant was executed. See *Scott v. United States*, 436 U.S. 128, 137 (1978).

the officers were not surprised by its presence should not disqualify the evidence.[16] *United States v. Hare*, 589 F.2d 1291, 1294 (6th Cir. 1979). See *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir. 1977); *United States v. Johnson*, 541 F.2d at 1314. See also W. Ringel, Searches & Seizures, Arrests and Confessions, sec. 6.5(a)(2) (2d ed. 1979). In view of the foregoing, we do not think that the existence of such potential knowledge required that such items be described with greater specificity in the warrant. *United States v. Golay*, 502 F.2d at 184. Cf. *Andresen v. Maryland, supra; United States v. Thompson, supra; United States v. Robinson*, 287 F. Supp. at 256; *Gordon v. Commissioner*, 63 T.C. 51, 67 (1974), affd. per curiam on this issue 572 F.2d 193 (9th Cir. 1977).

Petitioner relies heavily on *United States v. Baldwin*, 46 F.R.D. 63 (S.D. N.Y. 1969). In that case, the officers entered on a narcotics warrant containing substantially the same language as the warrant involved herein. The District Court excluded a passport they seized which became the basis of the criminal proceeding against Baldwin for making false statements in an application for a passport. Because the officers failed to demonstrate the nexus between the passport and the narcotics they went in for and seized, the court held that they could not lawfully seize the passport. In the course of its opinion, the court stated, "Besides narcotics, the only items which could be seized lawfully would be those related to narcotics, such as needles, scales, glassine envelopes or the like." (46 F.R.D. at 65.) We think petitioner's reliance on *Baldwin* is misplaced. At the time of the search, Baldwin was not arrested on any charge; in fact, he was not present at the time the premises were searched. It seems obvious that the passport, without more, was indeed neutral insofar as the narcotics were concerned so that the requisite nexus was missing.[17] The quoted language from the court's opinion was clearly unnecessary to its decision. Moreover, even as dicta, it would be inapplicable herein in light of the

---

[16]Had they included the cash and bank records in the warrant, we would hear petitioner argue that there was no probable cause for these items.

[17]Indeed, the District Court implied that if the narcotics seized had had any "indicia of illegal importation," it would have held that the passport was properly seized. See *United States v. Baldwin*, 46 F.R.D. 63, 65 (S.D. N.Y. 1969).

interpretation we have accorded the instant warrant. Cf. *Andresen v. Maryland, supra.*

In sum, although the instant warrant does not have the specificity of the warrant in *Nicholas v. Commissioner,* 70 T.C. 1057 (1978), from which respondent seeks to derive misplaced comfort, and although "more careful drafting would have eliminated any ambiguity" (see *United States v. Thompson,* 495 F.2d at 169), we think that it can and should be read broadly enough to include all of the items which petitioner seeks to suppress.

Additionally, and at the risk of being repetitious (see our discussion of the confluence, under the particular circumstances herein, between the determination of the scope of the warrant and the validity of the reasons for petitioner's arrest, p. 23 *supra*), we hold that, irrespective of any considerations relating to the proper scope of the warrant, the items seized fall within the scope of lawful seizures incident to an arrest. In reaching this conclusion, we have taken into account the fact that a warrant was in existence which authorized the search of the entire apartment, and that petitioner has attacked only the scope of the warrant in terms of the items seized and not the warrant itself or the permissible area of search (see n. 12 *supra*). See *United States v. Rollins,* 522 F.2d 160, 166 (2d Cir. 1975). In this connection, we emphasize that we do not have a situation before us involving a warrantless search. See *Coolidge v. New Hampshire, supra; Marron v. United States, supra.* It is in the foregoing context that we analyze the items seized incident to petitioner's arrest for possessing and trafficking in drugs.

The relationship or nexus between the items seized and the reasons for petitioner's arrest are substantially similar, if not identical, to that which we have found to exist between the items and the scope of the warrant as we have interpreted it. We think the items seized clearly satisfy the three basic requirements set forth in *Coolidge v. New Hampshire,* 403 U.S. at 468–471, to wit (1) because of the warrant, the presence of the seizing officers was lawful, (2) the items seized were in "plain view,"[18]

---

[18]Given the fact that the seizing officers were lawfully in the apartment and were, even under petitioner's view of the scope of the warrant, at least entitled to search the premises for narcotics, anything that they came across in the course of the search would be considered to be "in plain view" and properly seized incident to petitioner's arrest. *United States v. French,* 545

and (3) in light of our analysis of the nature of the items, their incriminating nature was apparent. A subsidiary element of the "plain view" requirement, that the discovery of the items seized incident to arrest be inadvertent, has often been read into *Coolidge v. New Hampshire, supra.*[19] The inadvertence requirement was met for reasons stated in our discussion at pp. 26–27 *supra.* Thus, petitioner's motion fails on either of two grounds.

In view of our conclusions, we again[20] leave to another day the question whether items seized in a Federal search in violation of the Fourth Amendment should be subject to the exclusionary rule—the question left open in *United States v. Janis,* 428 U.S. 433, 456 (1976). See also *Pizzarello v. United States,* 408 F.2d 579 (2d Cir. 1969); *Suarez v. Commissioner,* 58 T.C. 792 (1972).[21]

Petitioner's motion to suppress is denied.

*An appropriate order will be issued.*

---

F.2d 1021 (5th Cir. 1977). See *Warden v. Hayden,* 387 U.S. 294, 299 (1967). See also W. Ringel, Searches & Seizures, Arrests and Confessions, secs. 6.5(a) and 8.2(a) (2d ed. 1979). Thus, the cash found in the attache case and the shoe box (see p. 16 *supra*) was properly seized.

[19]Mr. Justice Stewart, together with three other members of the Court, argued that the discovery of evidence in plain view must be inadvertent. 403 U.S. at 469. It is arguable whether Mr. Justice Harlan's concurring opinion extended to the inadvertence requirement. See W. Ringel, *supra* n.18; at sec. 6.5(a)(2).

[20]See *Proesel v. Commissioner,* 73 T.C. 600 (1979); *Nicholas v. Commissioner,* 70 T.C. 1057, 1063 (1978); *Pollack v. Commissioner,* T.C. Memo. 1980–2.

[21]We note that, unlike the situation in *Suarez v. Commissioner,* 58 T.C. 792, 815 (1972), petitioner herein did not include any other requests for relief in his motion to suppress, e.g., a motion to shift the burden of proof. See also *Suarez v..Commissioner,* 61 T.C. 841 (1974). Given our disposition of the matters before us, we need not deal with any other requests which might have been relevant or which presumably would have been made at a later date.