OPINION OF THE COURT
Muriel Hubsher, J.
Defendant is charged with one count of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03) and two counts of criminal possession of a hypodermic instrument (Penal Law § 220.45) and moves to dismiss these charges pursuant to CPL 170.30 (1) (f). Defendant is also charged with operating a motor vehicle while under the influence of drugs (Vehicle and Traffic Law § 1192 [4]).
CPL 170.30 (1) (f) provides in pertinent part the following:
"After arraignment upon an information * * * or a misdemeanor complaint, the local criminal court may, upon motion of the defendant, dismiss such instrument or any count thereof upon the ground that:
"(f) There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged.”
Defendant argues that because he is a doctor, and therefore licensed to possess the drugs and syringes which were recovered from his vehicle, there exists a legal impediment to his prosecution for criminal possession of these items pursuant to CPL 170.30 (1) (f). This argument implies the existence of an absolute defense to criminal possession of a controlled substance and/or a hypodermic instrument for all licensed physicians. However, examination of the relevant public health statutes reveals that physicians are only exempt from the restrictions regarding the possession of these items if they are used "lawfully” and for a "recognized medical purpose”. Unfortunately doctors are no more immune from the perils of drug addiction than are the rest of society. It follows, therefore, that if a physician uses a hypodermic syringe and a controlled substance to satisfy a personal craving, such behavior would not fall within the parameters of the exemptions provided by the public health statutes and would be subject to criminal prosecution.
In Jin Feuy Moy v United States (254 US 189, 194 [1920]) the United States Supreme Court addressed the issue of a doctor’s immunity in dispensing narcotic drugs and held: "Manifestly the phrases 'to a patient’ and 'in the course of his professional practice only’ are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs *417 mentioned in the act, strictly within the bounds of a physician’s professional practice, and not to extend it to a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted.”
Similarly, in United States v Moore (423 US 122 [1975]) the United States Supreme Court unanimously held that a physician registered under the Controlled Substances Act (21 USC § 801 et seq.) was not exempt from prosecution merely because of his/her status as a registrant. Defendant in United States v Moore argued that he could not be prosecuted under 21 USC § 841 because his conduct was "authorized by [the] subchapter” (at 131). The United States Supreme Court rejected this argument and held that a registered physician is subject to prosecution when his/her conduct exceeds the bounds of professional practice. See also People v Connette (101 AD2d 699 [4th Dept 1984]), wherein both a licensed physician and his wife were convicted of numerous counts of criminal possession of a controlled substance. It was determined that the doctor had written fraudulent prescriptions to various people for Demerol (a Schedule II controlled substance) which were in actuality filled by the doctor’s wife. See also People v Shepard (50 NY2d 640 [1980]) in which the defendant, a licensed physician, was convicted of criminal possession of a controlled substance in the seventh degree when police found nine marihuana plants growing in his home.
Both criminal possession of a controlled substance and criminal possession of a hypodermic instrument require that a defendant’s alleged possession be both "knowing” and "unlawful”. (People v Tirado, 47 AD2d 193 [1st Dept 1975], affd 38 NY2d 955 [1976]; People v Strong, 42 NY2d 868 [1977].) Pursuant to Penal Law § 220.00 (2) "unlawful” is defined as "in violation of article thirty-three of the public health law.” Public Health Law § 3328 (1) provides the following:
"The following persons engaging in the following activities shall be exempt from the provisions of this title:
"1. A practitioner lawfully administering, dispensing, or prescribing a controlled substance in the course of his professional practice to an ultimate user for a recognized medical purpose” (emphasis added).
The substance the defendant is accused of criminally possessing is "Pethidine” which is listed as a controlled substance in Public Health Law § 3306 Schedule II (c) (16). Pursuant to Public Health Law § 3331 (2) the conditions under which this *418 substance may be administered by a licensed physician are the following: "A practitioner, in good faith, and in the course of his professional practice only, may prescribe, administer and dispense substances listed in schedules II, III, IV, and V, or he may cause the same to be administered by a designated agent under his direction and supervision” (emphasis added).
As has been previously indicated, defendant’s contention that a licensed physician cannot be prosecuted for criminal possession of a controlled substance and criminal possession of a hypodermic instrument is true only if such items are being used in accordance with the above-referenced public health laws. In the instant case, however, factual allegations exist which indicate that the defendant may have been driving while under the influence of drugs. Furthermore, evidence of such drugs and a used syringe were found in the glove compartment of defendant’s car. Police Officer Racioppo alleges that he observed the defendant driving in an erratic manner in that the defendant drove through two steady red lights and crossed over a double yellow line. When Officer Racioppo approached the vehicle the defendant was asleep behind the wheel and continued to fall asleep while standing up. Additionally, the defendant’s eyes were glassy and his pupils were dilated. Defendant submitted to a breathalyzer test which showed that his blood alcohol level was zero.
It may very well be that the defendant’s explanation of why he was in possession of the Pethidine and used syringes found in his car is completely accurate. Nonetheless, this is an issue that must be resolved at trial after a thorough and careful examination of all of the relevant evidence. (See, Public Health Law § 3396 [1].)*
Accordingly, for the reasons stated herein, defendant’s motion to dismiss pursuant to CPL 170.30 (1) (f) is hereby denied.

 Public Health Law § 3396 (1) provides in pertinent part the following: "In any civil, criminal or administrative action or proceeding brought for the enforcement of any provision of this article, it shall not be necessary to negate or disprove any exception * * * or exemption contained in this article, and the burden of proof of any such exception * * * or exemption shall be upon the person claiming its benefit.”