People v Grovner (2022 NY Slip Op 03632)

People v Grovner

2022 NY Slip Op 03632

Decided on June 3, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 3, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, NEMOYER, AND BANNISTER, JJ.

415 KA 19-01637

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DELBRIAN GROVNER, DEFENDANT-APPELLANT. 

CAMBARERI & BRENNECK, SYRACUSE (MELISSA K. SWARTZ OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KAITLYN M. GUPTILL OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Onondaga County (Gordon J. Cuffy, A.J.), rendered June 5, 2019. The judgment convicted defendant upon a jury verdict of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal possession of a controlled substance in the fourth degree (§ 220.09 [1]), defendant contends that the judgment is not supported by legally sufficient evidence that he possessed the heroin found in the backyard of his house and that the verdict is against the weight of the evidence with respect to that element. We reject those contentions.
Pursuant to a search warrant, Syracuse police officers searched a house in which defendant resided at least some of the time. Prior to the search, officers had the house under surveillance. They observed defendant and several codefendants coming and going from the house on numerous occasions in the weeks before the search. They also saw defendant leave the house shortly before the search. During the search, the officers found a quantity of heroin hidden under a fence in the backyard of the residence. In addition, scattered throughout the house were equipment used to process the drugs, chemicals to dilute the drugs, numerous empty packages into which the processed drugs could be placed for street-level sales, cell phones, and vehicle keys. Defendant was taken into custody at a separate location. At that time, he was in a minivan with one of the residents of the house, and that vehicle was parked next to a vehicle containing another resident. No drugs or packaging was found in the vehicles, but defendant was in possession of more than one thousand dollars. Defendant's personal property was found in a downstairs bedroom of the house, but none of the contraband or related materials were found in that bedroom. Nevertheless, documents sent to defendant at a different address were found on the kitchen table in the searched premises, along with a significant amount of drug packaging materials. Also found in the kitchen were a food processor that could be used to process drugs, additional packaging materials, lactose, and tan powder. Additional packaging material was present in other common areas near the kitchen. A police sergeant, testifying as the People's expert, indicated that lactose was used to dilute heroin, which was then packaged for individual sale in packaging materials and sold for cash. The bathroom, another common area, contained still more packaging materials and a digital scale that apparently had been used to weigh narcotics. Furthermore, during a recorded telephone call from the jail, defendant admitted ownership of two televisions in the house, one of which was in a common area near the kitchen, and he asked a relative to secure his car keys from the kitchen table.
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 [*2]NY2d 620, 621 [1983]), we conclude that there is a "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial" (People v Williams, 84 NY2d 925, 926 [1994]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Where, as here, there is "no evidence that defendant actually possessed the [drugs and drug paraphernalia], the People must establish that defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized" (People v Pichardo, 34 AD3d 1223, 1224 [4th Dept 2006], lv denied 8 NY3d 926 [2007] [internal quotation marks omitted]; see People v Manini, 79 NY2d 561, 573-574 [1992]; People v Nevins, 196 AD3d 1110, 1111 [4th Dept 2021], lv denied 37 NY3d 1061 [2021]). Here, the People presented evidence that the drugs found in the backyard were being processed in the kitchen of the residence in which defendant's property was located, that the drugs themselves were "readily accessible and available" to him (People v Hyde, 302 AD2d 101, 105 [1st Dept 2003], lv denied 99 NY2d 655 [2003]; see People v Mattison, 41 AD3d 1224, 1225 [4th Dept 2007], lv denied 9 NY3d 924 [2007]), and that recognized adulterants and drug paraphernalia were found on a table next to defendant's personal property and documents, which permits "the reasonable inference that defendant had both knowledge and possession" of the drugs and paraphernalia (People v Tirado, 47 AD2d 193, 195 [1st Dept 1975], affd 38 NY2d 955 [1976]; see People v Slade, 133 AD3d 1203, 1205 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]).
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we further conclude that the verdict is not against the weight of the evidence (see People v Patterson, 13 AD3d 1138, 1139 [4th Dept 2004], lv denied 4 NY3d 801 [2005]; see generally Bleakley, 69 NY2d at 495).
Defendant also contends that the admission in evidence of a statement a codefendant made during another recorded jail telephone call violated defendant's rights under Bruton v United States (391 US 123 [1968]) and Crawford v Washington (541 US 36 [2004]). Defendant failed to preserve that contention for our review (see People v Harper, 132 AD3d 1230, 1234 [4th Dept 2015], lv denied 27 NY3d 998 [2016]; People v Gilocompo, 125 AD3d 1000, 1001 [2d Dept 2015], lv denied 25 NY3d 1163 [2015]). Furthermore, we conclude that defense counsel's strategic decision to consent to the admission of the entire recording constituted a waiver of any Bruton or Crawford violation (see People v Reid, 71 AD3d 699, 700 [2d Dept 2010], lv denied 15 NY3d 756 [2010]; see also People v Serrano, 256 AD2d 175, 176 [1st Dept 1998], lv denied 93 NY2d 878 [1999]).
Defendant further contends that the People deprived him of his right to present a defense by failing to preserve a video recording from the surveillance of the exterior of the front of the house before and during the search. The People established that a hidden surveillance camera failed to record several weeks of data, including the day the police searched the house. Contrary to defendant's contention, Supreme Court did not err in giving an adverse inference charge rather than dismissing the charges against defendant based on the loss of the images. It is within the sound discretion of the trial court to determine the appropriate sanction for the loss of evidence (see People v Kelly, 62 NY2d 516, 521 [1984]), and "[g]iven that the exculpatory value of the missing evidence is completely speculative . . . , the court did not abuse its discretion in imposing the lesser sanction" of a permissive adverse inference instruction (People v Pfahler, 179 AD2d 1062, 1063 [4th Dept 1992]; see People v Page, 105 AD3d 1380, 1381 [4th Dept 2013], lv denied 23 NY3d 1023 [2014]).
Finally, we note that the certificate of conviction incorrectly reflects that defendant was convicted upon a plea of guilty of two counts each of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree, and it must therefore be amended to reflect that he was convicted upon a jury verdict of only one count of each crime (see People v Raghnal, 185 AD3d 1411, 1414 [4th Dept 2020], lv denied 35 NY3d 1115 [2020]).
Entered: June 3, 2022
Ann Dillon Flynn
Clerk of the Court